Gus K. Worms and Others, Copartners Doing Business under the Firm Name and Style of Newman Bros. & Worms, Respondents, *v.* Alvin Lake, Appellant.

First Department, December 2, 1921.

**Partnership — action for money had and received to recover money paid by plaintiff under agreement of coadventurers in oil and gas enterprise and misappropriated by defendant — defect of parties — defendant only accountable in suit in equity to which plaintiff's coadventurers are parties, since relationship of quasi-partnership existed and adventure had proceeded too far to warrant withdrawal of funds at will.**

In an action for money had and received based on an agreement between plaintiffs and twenty other individuals and defendant, it appeared that the plaintiffs contributed their share of $2,500 towards a fund of $40,000 with which the defendant agreed to manage and develop an oil and gas lease. The complaint proceeded upon the theory that the plaintiffs and their coadventurers in good faith made their contributions to the defendant, who, with two others, not joined in the action, undertook to manage the enterprise in accordance with the provisions of the contract, and that in the course of such management the defendant, in violation of his agreement, used part of the funds in procuring leases on other lands and constructing wells thereon. Plaintiffs did not allege that the enterprise had been abandoned or that the entire amount of $40,000 contributed had been used by the defendant for other purposes, but merely that he had misappropriated $2,500 thereof, the amount contributed by plaintiffs.

*Held,* that the defendant is not liable to the plaintiffs in an action at law such as this is, and is only accountable in equity to all of the parties, since all were coadventurers and there was a quasi-partnership relation between them, and, therefore, their rights and liabilities are to be determined and enforced upon the same principles as are applied by courts of equity to partnership transactions.

The joint adventure has proceeded too far to warrant the plaintiffs in withdrawing their funds at will, since their coadventurers may wish to proceed with the enterprise and to require the defendant to restore the misappropriated funds and to expend them as provided in the agreement. Hence, any relief to which the plaintiffs may be entitled must be had in a suit in equity to which their coadventurers are parties.

APPEAL by the defendant, Alvin Lake, from an order of the Supreme Court, made at the New York Special Term and entered in the office of the clerk of the county of New York on the 15th day of April, 1921, denying defendant's motion for judgment on the pleadings consisting of the complaint and demurrer thereto, and overruling defendant's demurrer to the complaint.

*Bennett & Sicher* [*William M. Bennett* of counsel], for the appellant.

*Van Vorst, Marshall & Smith* [*Alexander B. Siegel* of counsel], for the respondents.

LAUGHLIN, J.:

The plaintiffs allege that they are copartners engaged in business under the name of Newman Bros. & Worms; that on the 4th of June, 1919, they entered into an agreement with the defendant and David Mackenzie and C. W. Hicks, a copy of which is annexed to and made a part of the complaint. The agreement recites that it was made between the defendant and Mackenzie and Hicks, as parties of the first part, and the plaintiffs and twenty other named individuals, as parties of the second part; that the parties of the first part are the owners of a certain specified oil and gas lease of described lands in the State of Texas, bearing the date of the 6th of February, 1918, and that it was supposed that there was oil or gas under the premises that could be produced by drilling wells thereon; that the parties of the second part were desirous of sharing in the profits, if any, to be derived from the oil or gas or both that might be produced from such wells; and the parties of the second part in consideration of the covenants and agreements of the parties of the first part covenanted and agreed to bring in, contribute and pay to the parties of the first part on the execution and delivery of the agreement the

sums of money set opposite their respective names. The agreement then sets out separately the names of the parties of the second part and the amount each was to contribute to the enterprise, and the aggregate thereof is $40,000. The agreement next provides that these moneys were to be paid to the defendant, who agreed to keep and hold them separate and apart from his own, and to use and employ them for the purposes specified in the agreement and for no other purpose. The agreement further provides that the parties of the first part, for and in consideration of the premises, covenanted and agreed, immediately upon the execution of the agreement and the payment of said sum of $40,000, to commence and diligently prosecute the drilling of a well on the leased premises for the purpose of procuring oil or gas or both, and for that purpose to procure and construct such buildings, tanks, rigs, pipe lines, machinery and other structures and appliances as might be required, and that they would manage and control the building and drilling of the well and the sale or other disposition of the oil or gas or both produced or derived from the same, and all other business connected with the enterprise, without salary or other compensation for their services. It was further covenanted that the proceeds of the oil or gas produced or derived from the first well would be used for the purpose of building or drilling another well, and that they would continue to use the proceeds derived from the production of oil or gas or both in further developing the premises until the same should be fully developed; and that after the premises should be fully developed the profits derived from the enterprise, after paying the expenses of the production and sale of the oil and gas and the management of the business and a royalty of one-eighth of the oil and all royalties for the gas reserved in the lease, should be divided into two equal parts, one of which should be paid to the parties of the first part and the other divided among the parties of the second part in proportion to the amount contributed by them respectively as therein specified. It was further covenanted and agreed that if the $40,000 should be expended in the manner and for the purposes specified without resulting in the completion of the well to produce oil in paying quantities, and a further sum of money should be required to complete it, the parties of the first part

should have the right and privilege of procuring it from others if it should not be contributed by any of the parties of the second part, and that the parties contributing further necessary moneys should be entitled to share in the profits with the parties of the second part ratably and proportionally. It was also agreed that if the first well should be completed without producing oil in paying quantities, any money realized from the sale of the building, rigs, tanks, pipe lines, machinery and other structures and appliances built or procured out of the moneys contributed and paid by the parties of the second part should be paid to them ratably in proportion to the amount contributed by them respectively, and that a like disposition should be made of any surplus of the $40,000 not required for the completion of the first well. The copy of the agreement annexed to the complaint purports to have been signed and acknowledged only by the defendant, Mackenzie and Hicks, but, as will be seen presently, it is alleged inferentially at least, that the entire amount of $40,000 was contributed by the parties to the agreement.

It is further alleged in the complaint that thereafter the plaintiffs duly paid to the defendant $2,500 pursuant to the terms of the agreement; but that the defendant did not keep and hold the same separate and apart from his own money and did not use and employ it for the purposes specified in the agreement and, on the contrary, instead of devoting the money to commencing and diligently prosecuting the building and drilling of a well on the premises referred to in the agreement for the purpose of procuring oil or gas or both, and constructing buildings, tanks, rigs, pipe lines, machinery and other structures and appliances for the same purpose, and so managing and controlling the drilling of the well and the sale of the output as to construct another well with the profits, and thus continuing the development of the enterprise, used the money and permitted it to be used for the acquisition of oil leases on other tracts of land and for developing the same, and leaving an insufficient amount of the money contributed by the plaintiffs " and by the other persons who had subscribed the said agreement of June 4th, 1919, amounting in all to the sum of Forty Thousand Dollars " for the building and drilling the one well and the development of the premises referred to

in the agreement of June fourth, as contemplated by the parties and required by the oil lease; and that the defendant thereupon proceeded to secure more money from other persons, thereby reducing the interest of the plaintiffs in the enterprise, and even with the money so obtained failed to progress the enterprise to a point where it could be financed without further capital. The plaintiffs then allege that by reason of these facts they have become and are now entitled to have the defendant return their money, and have duly demanded the return thereof; and they demand judgment for $2,500 and interest thereon from June 4, 1919.

It thus appears that the complaint is at law and is predicated on the theory that when the defendant Lake after receiving all the contributions agreed to be made by the parties of the second part to the agreement, diverted and misappropriated the part of the fund contributed by plaintiffs to his own use, leaving insufficient for the construction of the first well, the plaintiffs were entitled at their own election, and in disregard of the rights of the other parties who were coadventurers with them, to rescind for the alleged breach of contract and trust and to recover back the amount of their contribution.

The grounds of the demurrer are that the complaint fails to state facts sufficient to constitute a cause of action, and that there is a defect of parties plaintiff and of parties defendant, in that plaintiffs' coadventurers should have been joined either as plaintiffs or defendants, and that there is a defect of parties defendant in that Mackenzie and Hicks were not joined.

The learned court at Special Term regarded the action as analogous to one for money had and received, and held that even if the plaintiffs and their coadventurers had an undivided interest in the fund, that would not require that their coadventurers be joined in the action, and cited *Stall* v. *Wilbur* (77 N. Y. 158) as authority for the latter proposition. That, however, was an action by one joint legatee to recover of another joint legatee, who was in possession of the farm, his undivided interest in a crop of wheat left by the testator to five legatees; and, therefore, I think, it is plainly distinguishable on the facts and is not authority for the maintenance of this action without joining the plaintiffs' coadventurers. It will

be observed that it is neither alleged that the enterprise has been abandoned nor that the entire amount of $40,000 contributed has been used by the defendant for other purposes, but merely that he has misappropriated $2,500 thereof. Plainly, all the parties to the agreement were coadventurers and there was a quasi-partnership relation between them, and, therefore, the rights and liabilities of the parties are to be determined and enforced upon the same principles as are applied by courts of equity to partnership transactions. (*O'Hara* v. *Harman*, 14 App. Div. 167; *Wilcox* v. *Pratt*, 125 N. Y. 688; *Natter* v. *Blanchard Co.*, 153 App. Div. 814; *Stoller* v. *Franken*, 171 id. 327; *Voegtlin* v. *Bowdoin*, 54 Misc. Rep. 254.) Where one is induced by fraudulent misrepresentations to become a partner or joint adventurer, he may upon discovery of the fraud rescind and recover back the capital contributed by him; but his remedy for misconduct in the management of the affairs of a copartnership or joint adventure is an accounting in equity, and in such suit he will be allowed to recover his damages. (*Hollister* v. *Simonson*, 36 App. Div. 63.) Here, it will be observed, the plaintiffs do not question the validity of the agreement, and there is no charge of any fraudulent misrepresentation by which they were induced to become a party thereto. The complaint proceeds upon the theory that the plaintiffs and their coadventurers in good faith made their contributions to the defendant, who with Mackenzie and Hicks undertook to manage the enterprise in accordance with the provisions of the contract, and that in the course of such management the defendant in violation of his agreement used a part of the funds in procuring other leases and constructing wells thereon. It is quite plain, I think, that the defendant is not liable to the plaintiffs in an action at law such as this is, and is only accountable in equity to all of the parties of the second part to the agreement. (*Hollister* v. *Simonson, supra.*)

This joint adventure has proceeded too far to warrant the plaintiffs in withdrawing their funds at will. It may be that their coadventurers may wish to proceed with the enterprise, and to require the defendant to restore the misappropriated funds and to expend them as provided in the agreement, and, therefore, any relief to which the plaintiffs may be entitled

must be had in a suit in equity to which their coadventurers are parties. (*Mitchell* v. *Tonkin,* 109 App. Div. 165; *Belanger* v. *Dana,* 52 Hun, 39; *Marston* v. *Gould,* 69 N. Y. 220; *Wilcox* v. *Pratt,* 125 id. 688; *Natter* v. *Blanchard Co.,* 153 App. Div. 814; *Dalury* v. *Rezinas,* 183 id. 456; *Moppar* v. *Wiltchik,* 56 Misc. Rep. 676; *Voegtlin* v. *Bowdoin,* 54 id. 254; 22 Am. & Eng. Ency. of Law [2d ed.], 27.)

I deem it quite clear, therefore, that the complaint fails to state facts sufficient to constitute a cause of action, and that there is a defect of parties defendant, and that the demurrer on those grounds was properly taken and should have been sustained. It follows that the order should be reversed, with ten dollars costs and disbursements, and the demurrer sustained, with ten dollars costs, but with leave to the plaintiffs to amend on payment of the costs of the appeal and motion.

CLARKE, P. J., SMITH, MERRELL and GREENBAUM, JJ., concur.

Order reversed, with ten dollars costs and disbursements, and motion granted, with ten dollars costs, with leave to plaintiffs to serve amended complaint on payment of said costs.