HORACE B. FORMAN, JR., Plaintiff, *v.* THORNLEY LUMM and Another, as Administrators c. t. a. of the Estate of THOMAS H. THORN, Deceased, Defendants.

First Department, December 4, 1925.

Joint adventure — plaintiff entered into agreement to furnish money to build houses on intestate's lots — intestate agreed to supervise construction and sell completed houses without compensation — profits were to be divided equally and plaintiff was not to be repaid advances — second house was not to be built until first was sold — intestate died after first house was completed but before sale — plaintiff sold house and remainder of lots — joint adventure shown — parties are liable equally for losses.

The plaintiff cannot recover from the defendant the amount he claims to be due under an agreement entered into between the plaintiff and the defendant's intestate, for a joint adventure is established by the evidence under which plaintiff and the defendant's intestate are each obligated to share the losses equally, since it appears that the intestate owned certain lots; that the agreement stipulated that the plaintiff would furnish the money to build houses thereon; that the intestate, under the contract, was to supervise the construction of the houses and to sell the same without compensation; that the profits realized thereon were to be divided between the parties equally; that there was no agreement for the repayment to the plaintiff of the advances made; that a second house was not to be built until the first had been completed and sold; that deeds were executed by the intestate to the plaintiff but were not delivered and were kept in a safe deposit box accessible to both parties; that the contract provided that on the death of either party the other should take charge of the enterprise; and that the plaintiff treated the contract, in proofs of claim filed against the estate, as a joint adventure.

Accordingly, since it appears that both the plaintiff and the estate have suffered a loss, the total loss suffered by both must be divided, and the plaintiff is responsible to the estate for an amount equal to the difference between one-half the loss and the amount of the loss that he had suffered prior to the commencement of the action.

SUBMISSION of a controversy upon an agreed statement of facts pursuant to section 546 of the Civil Practice Act.

*John P. Broomell,* for the plaintiff.

*Walton, Bannister, Hubbard & Stitt* [*Edward W. Stitt, Jr.,* of counsel; *Daniel Day Walton* with him on the brief], for the defendants.

BURR, J.:

The facts agreed upon are substantially as follows: Thomas H. Thorn, for several years prior to his death on January 29, 1922, owned four adjoining lots on the west side of Carpenter avenue, in

the borough of The Bronx, New York city. These lots were subject to a blanket mortgage for $3,000, and in 1921 were worth $1,500 each. On May 11, 1921, Thorn entered into an agreement with his nephew, the plaintiff, Horace B. Forman, Jr., which is as follows:

" Agreement between Thomas H. Thorn of 36 West Kingsbridge Road, Borough of Bronx, New York City, and Horace B. Forman, Jr., of Kitchawan, Westchester Co., New York.

" Dated Eleventh of May, 1921. * * *

" WHEREAS: the said Thomas H. Thorn owns four lots, each of size 25 feet by 95 feet, Nos. 40, 41, 42, 43, Block 5036 Tax Map of the City of New York, situate on the West side of Carpenter Avenue between 237 & 238th Street, Borough of Bronx, New York City; and desiring to erect two family houses thereon, herewith agrees by these presents to assign the aforesaid lots to the said Horace B. Forman, Jr., and in consideration of same, and that the said Thomas H. Thorn further agrees to let the Contracts, Superintend the Construction, keep accurate Cost Account Distribution, and sell said house or houses after construction to the best interests of the Contracting parties hereto; the said Horace B. Forman, Jr., agrees to furnish the money to build said House or Houses in amount of about Ten Thousand Dollars, which sum is to be kept in a Special Fund for building purposes only.

" It is agreed that only one house is to be built at a time, and that no other house on said lots shall be commenced until the first house is completed and sold at a satisfactory price to be hereinafter determined by the contracting parties.

" It is further agreed that when the property built upon is sold as above outlined, that Firstly: the cash advanced by the said Horace B. Forman, Jr., for the construction of the house, is to be paid him in full together with six per cent interest on the money advanced during the period of construction and up to date of the sale of property, and Secondly: that the said Thomas H. Thorn shall receive in full payment for the lot built upon, the sum of Fifteen Hundred Dollars, together with six per cent interest on this sum during the period of construction and up to the date of the sale of the property the said Thomas H. Thorn agreeing to pay off any mortgage against the said lots with this sum received, and Finally the balance of the money received after above payments have been made, shall be divided equally, share and share alike, between the said Thomas H. Thorn and Horace B. Forman, Jr.

" In case of the death of either of the Contracting parties it is herewith agreed that the survivor shall assume charge of this business, and at once proceed to settle up same, and that no new

building shall be started, and when the property already built upon is sold and distribution of the money received is made as provided above, then this agreement is to cease and determine, the said. Horace B. Forman, Jr., his heirs and assigns agreeing to assign back to the said Thomas H. Thorn all lots not built upon, or to assign same to his heirs or assigns.

" It is further agreed that no new building is to be started after January 1st, 1922, except by mutual consent of the contracting parties, and further if the sale of the first building built is not satisfactory to either of the parties hereto, no new building shall be started and that this agreement will thereupon Cease and Determine after the first property built upon is sold and the proceeds received divided as provided above by this instrument.

Dated May 11th, 1921.

                " (Signed)        THOMAS H. THORN,
                " (Signed)        HORACE B. FORMAN, JR.
" Witness...................."

At the same time that the agreement was executed Thorn prepared four warranty deeds conveying the four lots to the plaintiff without making reference in any of the deeds to the $3,000 blanket mortgage, but in the agreement it was provided that out of the proceeds of the sale of the lots built upon, $1,500 was to go to him before the division of profits, out of which he was " to pay off any mortgage against the said lots." These deeds, however, were never actually delivered to Forman by Thorn, but were placed in a safe deposit box to which both had access.

Shortly thereafter Forman sent ten checks, each for $1,000, to Thorn to be used in the construction of the first house, and Thorn placed the checks with the four deeds to the lots in the safe deposit box in the Colonial Bank, to which both he and Forman had access. The plaintiff and Thorn discussed the cost of the concrete foundation prior to Forman's leaving to spend the summer in Europe, and in the last letter in the correspondence Forman wrote to Thorn: " I received your letter acknowledging receipt of the Ten Checks acct building purposes, and hope that the venture will prove successful for both of us."

Thorn proceeded with the erection of a two-family house on one of the lots and spent in connection with the enterprise the sum of $9,900. On October seventh he wrote to his nephew that the house was finished and that he was asking $12,500, and that he expected a $5,500 first mortgage within a few days which would cost $300. No objection was made by Forman. Thereafter, on January 9, 1922, Thorn mortgaged the completed house and lot

to Clara Schoch for $5,500; $3,000 of this amount was deposited by Thorn in Forman's account in the Colonial Bank. Of the balance $2,000 was paid on account of the $3,000 blanket mortgage from which the lot on which the house had been completed was released, and the balance of $500 was spent in procuring the new mortgage and releasing the old.

On January 27, 1922, the plaintiff learned that Thorn was dying and he accordingly came to New York and took the four deeds from the safe deposit box and recorded them in the Bronx county register's office. Thorn died two days later and his will bequeathed his entire estate to Margaret E. Lumm, who was named as executrix.

Thereafter and in accordance with the terms of the contract, Forman took charge of the property and endeavored to sell the two-family house. On April 21, 1923, before a sale was had, he filed proof of a contingent and unliquidated claim with Margaret E. Lumm, executrix, in which he swore that " On or about the 11th day of May, 1921, by an agreement in writing dated on that day, the decedent Thomas H. Thorn and the deponent agreed to enter upon a joint venture or copartnership for the erection of a house or houses on certain lots owned by the said decedent located on Carpenter Avenue, in the Borough of Bronx, City of New York. * * * "

On May 31, 1923, the plaintiff sold the house for $5,000 subject to the $5,500 Schock mortgage. This sale was made with the knowledge and approval of Margaret E. Lumm (Thorn's executrix).

Thereafter the plaintiff filed another verified proof of claim prepared by his attorney, which did not allege that it was " contingent and unliquidated " and repeated the allegation that the plaintiff and the decedent Thomas H. Thorn had agreed to enter " upon a joint venture or copartnership." Both these claims were rejected by the executrix, her attorneys advising Forman's attorney that in their opinion, on the basis of a joint venture or copartnership, Forman was indebted to the estate of Thomas H. Thorn.

The proceeds of the sale of the house were insufficient to reimburse Forman, and he thereafter sold the other three lots, with the knowledge and approval of Margaret E. Lumm. After applying the entire net proceeds of the sale of the remaining three lots, there still remained a deficiency of $2,817.25, which the plaintiff now asserts he should recover out of decedent's general estate. On April 30, 1924, he filed a proof of claim in this amount. The affidavit of claim does not refer to the " joint venture or copartnership " mentioned in the other proofs of claim, but alleges that " Deponent undertook to finance the erection of a house or houses

on four certain lots owned by the said Thomas H. Thorn.   *   *   * "
This claim was likewise rejected by the executrix.

Thereafter Mrs. Lumm died and the present defendants, named in her will as executors, qualified as administrators with the will annexed of Thomas H. Thorn.

The net result of the entire transaction appears to be that Horace B. Forman is out of pocket the sum of $2,817.25, as of May 31, 1923, and the Thorn estate has lost the sum of $3,436.55, as of May 31, 1923. The question to be determined is whether Forman is entitled to recover out of Thorn's general estate the said $2,817.25, or whether his loss and the loss to the Thorn estate should not be shared equally by the parties to this litigation. In other words, we are asked to determine what was the relationship between the parties. Did the agreement create a partnership between them? Or was it merely an arrangement to finance a business project?

I think the conceded facts show the existence of a joint adventure or quasi partnership between these parties in this specific enterprise.

A joint adventure is defined as a " special combination of two or more persons where in some specific venture a profit is jointly sought without any actual partnership or corporate designation." (Schouler Pers. Prop. [5th ed.] § 167a.) It is an association of two or more persons to carry out a single business enterprise for profit, for which purpose they combine their property, money, effects, skill and knowledge. In Corpus Juris (Vol. 33, p. 841) it is stated that " A joint adventure as a legal concept is of comparative recent origin. It is purely the creature of our American courts."

The parties to the agreement in this controversy were engaged in a joint venture to share the profits of a real estate speculation similar to that in the case of *Burkardt* v. *Walsh* (49 App. Div. 634). A contract by and in pursuance of which parties engage in a joint enterprise is to be enforced, and the rights and liabilities of the parties determined, upon the same principles as are applied by courts of equity to partnership transactions. (*Wilcox* v. *Pratt*, 125 N. Y. 688; *Worms* v. *Lake*, 198 App. Div. 776, 781; *Hill* v. *Curtis*, 154 id. 662; *Burkardt* v. *Walsh, supra.*)

The admitted facts show that the parties had implicit confidence in each other; that the profits were to be shared equally; that the money advanced by Forman was to be kept in a special fund for building purposes only; that the parties consulted together regarding the prospective cost of the concrete foundation; that the agreement provides that the house should be sold " at a satisfactory price to be hereinafter determined by the contracting parties;" that For-

man referred to the transaction as a joint venture or copartnership; that the deeds and checks were placed in a safe deposit box to which both parties had independent access; that Forman stated in his letter to Thorn of May 20, 1921, that he hoped "the venture will prove successful for both of us;" that the agreement provides that on the death of either Forman or Thorn the survivor should assume charge of the enterprise; that there is no agreement by Thorn to repay the advances made by Forman; and the fact also appears that Thorn took the risk of receiving nothing for his services in erecting the house. These facts taken together authorize the inference (See *First Nat. Bank* v. *Gallaudet*, 122 N. Y. 655), and under the submission must lead to the conclusion, that the parties were engaged as partners in a joint venture. What the intention of the parties was in entering into this agreement is shown not alone by their acts but also by the sworn statement of Forman that he and Thorn had "agreed to enter upon a joint venture or copartnership."

In *Kent* v. *Universal Film Mfg. Co.* (200 App. Div. 539) Mr. Justice LAUGHLIN, writing for the court, said (p. 547): "The intention of the parties is controlling in determining whether as between themselves Poli was to be a copartner or coadventurer." (Citing cases.)

It is plain that the parties considered that the advance of the necessary money by Forman was offset by Thorn's services in supervising the construction of the house. The agreement carefully provides for the repayment to Forman of the money he advanced, with interest, before the division of any profits; but nowhere is there any provision for the payment to Thorn for his services, except through the division of profits, if any, with Forman. This particular point was held decisive by this court in declaring an agreement to be a joint venture in the case of *Kraemer* v. *World Wide Trading Co., Inc.* (195 App. Div. 305). At page 308 the court said, through Mr. Justice LAUGHLIN: "The point presented by the appeal is whether these allegations show a joint adventure entitling plaintiff to an accounting or whether they should be construed as showing merely an employment of the plaintiff by the defendant with an obligation to pay therefor an amount equal to one-half the commissions for which he has only an action at law. The law by which the case is to be decided is well settled. The only difficulty is in determining from the facts to which class of cases a particular case belongs. I regard this as a border case, but since plaintiff took the risk of receiving nothing for his services and each of the parties was to receive one-half of any commissions paid therefor, I am of opinion that a joint adventure is shown in

which each of the parties was to and did render services in earning the commissions, which, by the agreement, were to be paid by the foreign corporation to the defendant for himself and the plaintiff, and that a fiduciary relation existed between them under which the defendant received the commissions in trust as the agent of the plaintiff to the extent of one-half, which it was its duty to pay over to the plaintiff as received. If the allegations of the complaint are susceptible of this construction, as I think they are, the right to an accounting is clear. (*May* v. *Hettrick Brothers Co.*, 181 App. Div. 3; affd., 226 N. Y. 580; *Valdes* v. *Larrinaga*, 233 U. S. 705; *Marvin* v. *Brooks*, 94 N. Y. 71; *Marston* v. *Gould*, 69 id. 220; *Franken-Karch Corp.* v. *Castriotis*, 195 App. Div. 529; *China & Japan Trading Co., Ltd.*, v. *Provand*, 155 id. 171; *Hill* v. *Curtis*, 154 id. 662; *Freeman* v. *Miller*, 157 id. 715, 719; *Boice* v. *Jones*, 106 id. 547; *Peirce* v. *McDonald*, 168 id. 47, 56; *Frethey* v. *Durant*, 24 id. 58; *Jordan* v. *Underhill*, 91 id. 124; *Weldon* v. *Brown*, 84 id. 482; 89 id. 586; *Hathaway* v. *Clendening Co.*, 135 id. 407; *Rice* v. *Peters*, 128 id. 776; *Stoller* v. *Franken*, 171 id. 327.) "

In *Vernon Metal & Produce Co., Inc.*, v. *Joseph & Bros. Co.* (212 App. Div. 358) this court held that the parties had entered into a contract of joint venture with reference to 12,000 tons of condemned shells, although the written contract entered into between the parties did not mention a division of losses. It did, however, provide for a payment of " one-half of the net profits upon this transaction as profits may be realized."

The cases cited by defendant (*Richardson* v. *Hughitt*, 76 N. Y. 55; *Curry* v. *Fowler*, 87 id. 33; *Cassidy* v. *Hall*, 97 id. 159) had to do with attempts by creditors to establish a partnership, and do not apply to the facts here. As was said of these cases by Chief Judge RUGER in *Hackett* v. *Stanley* (115 N. Y. 625, 631): " They were all cases distinguished by peculiar circumstances taking them out of the operation of the general rule."

The plaintiff cites the case of *Demarest* v. *Koch* (129 N. Y. 218). In that case Spaulding agreed to secure title to a certain piece of land, subject to a purchase-money mortgage, procure a builder's loan, and erect two houses at her own expense. Koch agreed to furnish one-half of all money required to finish the houses over the builder's loan. Spaulding agreed that when the houses were completed she would convey one of them to Koch subject to one-half the mortgages, and secured her agreement by a mortgage on the premises to Koch. The agreement further provided that in case both parties elected to sell, Koch should receive one-half the proceeds of a sale, and that the parties intended to divide equally any profits which might result from the sale of the buildings.

The property was never sold. The plaintiff sought to hold Koch as a partner for work done on the buildings under a contract with Spaulding. The court denied the plaintiff recovery, saying (p. 222): " There was no community of property or profits provided for by this agreement, except such as would follow any executory agreement to purchase a house for a specified price of a builder which was yet to be built."

In the instant case there was a community of property and profits between Forman and Thorn. These parties were engaged in a joint business venture and the principles of the law of partnership apply. (*Burkardt* v. *Walsh, supra.*) The profits were to be shared equally, and the losses must be shared on the same basis. The $3,000 mortgage became a debt of the venture and was so treated by the parties. A new mortgage in a larger amount was substituted for it. Of this new mortgage Forman accepted the benefits.

As the result of the joint venture is that the plaintiff Forman has lost the sum of $2,817.25, and the defendant Thorn estate has lost the sum of $3,436.55, the defendant should have judgment against the plaintiff for the sum of $309.65, with interest thereon from May 31, 1923, and without costs.

CLARKE, P. J., DOWLING, MERRELL and McAVOY, JJ., concur.

Judgment directed for defendant for $309.65, with interest thereon from May 31, 1923, without costs. Settle order on notice.