848 F.2d 574
 Mr. and Mrs. Tommy DAVIDSON, Plaintiff-Appellant,
v.
ENSTAR CORPORATION, Joe D. Price, Furth Oil Company, and
Shell Offshore, Inc., Defendants-Appellees.
Robert D. HOUSE and Shirley House, Plaintiffs-Appellants,
v.
ENSTAR PETROLEUM, INC., et al., Defendants-Appellees.
 No. 86-3874.
 United States Court of Appeals,
Fifth Circuit.
 June 30, 1988.
 
 Robert B. Keaty, Kerry E. Shields, Keaty & Keaty, New Orleans, La., for Davidson, et al. and House, et al.
 James H. Daigle, Allen J. Krouse, III, Lemle, Kelleher, Kohlmeyer, Dennery, Hunley, Moss & Frilot, New Orleans, La., for Enstar, etc. et al.
 Appeal from the United States District Court for the Eastern District of Louisiana.
 Before RUBIN, WILLIAMS, and DAVIS, Circuit Judges.
 W. EUGENE DAVIS, Circuit Judge:
 
 
 1
 Appellants appeal from an adverse summary judgment in a personal injury action against several of the co-owners of an offshore oil platform on which they were injured. The district court ruled that the plaintiffs/appellants were employed by a joint venture and that the appellee platform owners were members of that joint venture and therefore were shielded from tort liability by the Longshore & Harbor Workers' Compensation Act (LHWCA), 33 U.S.C. Sec. 901 et seq. We vacate the judgment of the district court.
 
 I.
 
 2
 Appellants Tommy Davidson and Robert House were employed as production workers on an oil production platform located on the Outer Continental Shelf off the coast of Louisiana. They suffered serious injuries when the platform collapsed during a hurricane. Appellants sued several of the co-owners of the platform, asserting a tort cause of action for damages under Louisiana law against these defendants for failure to maintain the platform in a safe condition.
 
 
 3
 Each of the defendants in this case is a party to a Joint Operating Agreement (JOA) for the ownership and operation of oil and gas leases. ODECO Oil & Gas Company (ODECO) and defendant Ocean Oil & Gas Company (Ocean Oil) each own an approximate forty-two percent interest in the joint leases and production equipment, including the platform in question. The other defendants--Enstar Corporation, Shell Offshore, Inc., Joe D. Price and Furth Oil Company--own the remaining approximately fifteen percent interest in the leases and platform. Each party to the agreement contributes to development costs and expenses and shares in any profits according to its percentage of ownership stated in the JOA. Section XIV of the JOA, however, provides in part: "[i]t is not the intention of the parties hereto to create a partnership, association, trust, or other semblance of business entity."
 
 
 4
 The JOA designates ODECO as the "Operator" of the joint leases held by the parties to the agreement. As operator, ODECO supervises all operations connected with "the exploration, development, production, treating and handling of oil and gas...." As Operator, ODECO is also responsible for routine managerial functions, such as maintaining funds generated from the JOA and payment of operating expenses. As Operator, ODECO hires the production workers and advances the funds to pay their salaries; but all parties to the agreement share these and all other expenses on a pro rata basis.
 
 
 5
 The remaining parties to the agreement--the appellees in this case--are "Non-Operators." In the JOA, the Non-Operators relinquish most if not all control over routine operating decisions but retain some control over less routine decisions. For example, the Operator may not spend more than $25,000 on any one item or project unless it first obtains the consent of each Non-Operator. Non-Operators may elect to withhold contributions and not participate in specified kinds of exploration and development operations. In addition, the Non-Operators retain authority to remove ODECO and appoint a new Operator.
 
 
 6
 The district court held that the parties to the JOA are joint venturers and that the joint venture employed plaintiffs. The district court concluded that the defendants, as members of the joint venture, are shielded from tort liability.
 
 
 7
 Appellants contend that, as a matter of Louisiana law, the JOA did not create a joint venture between ODECO and the Non-operators and that ODECO was the employer of the plaintiffs. Alternatively, appellants argue that the existence of material questions of fact regarding the relationship between ODECO and the Non-Operators precluded the court from deciding on a motion for summary judgment that these parties were engaged in a joint venture.
 
 II.
 A.
 
 8
 We begin with appellants' contention that Louisiana law prevents the JOA from creating a joint venture. In 1980, the Louisiana legislature enacted La.Rev.Stat.Ann. Sec. 31:215 which provides: "A written contract for the joint exploration, development, or operation of mineral rights does not create a partnership unless the contract expressly so provides." Appellants assert that Sec. 31:215 governs the JOA in this case and prohibits us from concluding that the parties to the agreement are joint venturers.
 
 
 9
 Appellants do not explain why we should apply state law to determine whether the LSHWA provides them with a shield against tort liability; their view appears to be that because the injuries occurred on the Outer Continental Shelf off the coast of Louisiana, the OCSLA makes Louisiana law applicable to their suits. See 43 U.S.C. Sec. 1333(a)(2)(A). Under the OCSLA, however, state law is "applicable" only to fill gaps in federal law. Nations v. Morris, 483 F.2d 577, 585 (5th Cir.), cert. denied, 414 U.S. 1071, 94 S.Ct. 584, 38 L.Ed.2d 477 (1973). Because the LHWCA provides a "comprehensive scheme" of rights and remedies, id. at 588, we conclude that the resolution of this appeal turns on an interpretation of the LHWCA and does not depend on a gap in federal law that must be filled by state law.
 
 
 10
 The availability of a shield to appellees against tort liability depends upon whether: (1) a joint venture can qualify as an "employer" under the LHWCA and if so, (2) whether appellees were engaged in a joint venture with ODECO.
 
 1.
 
 11
 The LHWCA provides that "[t]he liability of an employer [to pay the compensation] prescribed in Sec. 904 of this title shall be exclusive and in place of all other liability of such employer to the employee...." 33 U.S.C. Sec. 905(a) (1987). The LHWCA does not define "employer" in terms of the types of entities that qualify. Instead, it defines the class of employees covered by the Act and then defines "employer" as "an employer any of whose employees" are covered by the Act. When Congress extended the LHWCA to cover oil recovery operations on the Continental Shelf, it changed the class of covered employees but repeated without change the definition of employer.
 
 
 12
 The Act does not limit the type of legal entity that can qualify as an employer. Given the intent of Congress to provide coverage to all persons within the statutory definition of employee, the conclusion is inescapable that any entity capable of employing a worker can qualify as an employer. This obviously includes partnerships and joint ventures. This proposition is not expressly contested by the parties, and we see no reason to question it.
 
 2.
 
 13
 The issue on which the parties focus is whether the appellees were engaged in a joint venture with ODECO, the Operator. We must first determine whether we look to Louisiana law for the elements of a joint venture or to the well-established law that existed when the LHWCA was enacted. The answer to this question is important because of the unique Louisiana statute, La.Rev.Stat.Ann. Sec. 31:215, that places special requirements on the creation of a joint venture if the objective is to develop mineral rights.
 
 
 14
 Because our task in this case is to interpret a federal statute by determining congressional intent, we must read the legislation "in the light of the common law and the scheme of jurisprudence existing at the time of its enactment." N. Singer, Sutherland on Statutory Construction Sec. 50.01 at 421 (4th ed.1984); see Isbrandtsen Co., Inc. v. Johnson, 343 U.S. 779, 72 S.Ct. 1011, 96 L.Ed. 1294 (1952); Thomas v. United States, 189 F.2d 494 (6th Cir.), cert. denied, 342 U.S. 850, 72 S.Ct. 78, 96 L.Ed. 641 (1951). When Congress first enacted the LHWCA in 1927, joint ventures were widely recognized as one form of partnership and were generally governed by the same rules of law as partnerships.[1] The law in 1927, as it does today,[2] generally considered four factors relevant in determining whether the parties to an endeavor are joint venturers: (1) whether the parties intended to form a partnership or joint venture; (2) whether the parties share a common interest in the subject matter of the venture; (3) whether the parties share profits and losses from the venture; and (4) whether the parties have joint control or the joint right of control over the venture. We conclude that Congress intended that "joint ventures," as that term was generally understood in 1927, were entitled to the shield from tort liability if they employed workers covered by the LHWCA.
 
 
 15
 The strong congressional desire for uniform application of the LHWCA, see, e.g., Calbeck v. Travelers Ins. Co., 370 U.S. 114, 120, 82 S.Ct. 1196, 1200, 8 L.Ed.2d 368, 373 (1962); Gay v. Ocean Transport & Trading, Ltd., 546 F.2d 1233, 1237 (5th Cir.1977), also augurs in favor of this interpretation. Acceptance of appellants' argument that only a joint venture, as defined by Louisiana law, qualifies for the tort shield makes the availability of the shield to joint ventures depend on the pecularities of state law.
 
 
 16
 The analysis appellants urge us to adopt to defeat appellees' tort shield would also conflict with the Congressional desire for a liberal interpretation of the Act in favor of coverage. A holding that the Act provides no tort shield to a joint venture (or its members)[3] unless it qualifies as such under the Louisiana law would support an argument that the same entity has no responsibility to appellants for compensation benefits under the Act. It is inconceivable that Congress intended to deny an employee the right to recover compensation benefits from an entity that would be considered his employer except for a peculiar and restrictive state law. We are also unwilling to interpret the Act so that an employee may recover compensation benefits from his joint venture employer in or adjacent to some states but not in others.
 
 
 17
 In Bertrand v. Forest Corp., 441 F.2d 809, 811 (5th Cir.), cert. denied, 404 U.S. 863, 92 S.Ct. 106, 30 L.Ed.2d 107 (1971), we referred to Louisiana authorities in determining whether the parties to a joint operating agreement were "joint venturers." Nevertheless, Bertrand does not compel the application of state law in this case. Bertrand was decided before the enactment of La.Rev.Stat. Ann. Sec. 31:215, when Louisiana defined joint venture substantially the same as every other jurisdiction and as set forth above. We are persuaded that the Bertrand court cited Louisiana authorities as representative of the general law of joint venture.
 
 B.
 
 18
 Appellants next contend that the express language of the JOA disavowing an intent to form a partnership or other similar business entity reflects the parties' intent not to create a joint venture. Appellants argue that the contract language at least gives rise to a question of fact regarding the first element for a joint venture, the intent of the parties. Appellees respond that we should ignore their express statement of intent because the remainder of the contract clearly reflects the parties' intent to form a joint venture.
 
 
 19
 Our task in this case is to determine from the JOA whether the parties to that agreement intended to form a partnership or joint venture. See Restatement (Second) Contracts Sec. 201 comment c; id. Sec. 212, comment a. When we read Sec. XIV of the JOA we see that the parties have in unmistakably clear language answered this question: "[i]t is not the intention of the parties hereto to create a partnership, association, trust, or other semblance of business entity." We know of no rule of contract interpretation that suggests we should not give effect to this clear statement of intent.
 
 
 20
 Appellees, relying on Albina Engine & Machine Works, Inc., v. Abel 305 F.2d 77 (10th Cir.1962), Shell Oil Co. v. Prestidge, 249 F.2d 413 (9th Cir.1957), and 2 S. Williston, Contracts 563 (3d ed.1959), argue that we should look elsewhere in the contract to infer their intent, even in the face of this express statement. But appellees' reliance on these authorities is misplaced. In each of them a stranger to the contract was permitted to prove from the objective facts the relationship among the parties without regard to the relationship the parties stated they were creating. The reason is apparent. Parties to a contract are ordinarily bound by its terms; strangers are not. The appellees cannot stretch these cases to support the argument that they, as parties to the JOA, are free to disavow the very language they chose to include in the contract.
 
 
 21
 Appellees for whatever reasons--to avoid being taxed as a partnership, to avoid liability, or for other purposes--chose to specify in the JOA that their arrangement would not be considered a partnership or similar entity. Because it now serves their interest to have the relationship characterized as a joint venture, so they can avoid tort liability to employees working on the platform, they seek to disavow their contract language. This they cannot do.
 
 
 22
 Because the JOA negates the appellees' intent to form a joint venture, the district court erred in concluding, as a matter of law, that the parties were doing business in that form. The judgment of the district court is predicated on this determination and thus must be reversed.
 
 
 23
 For the reasons given above, the judgment of the district court is reversed and the case remanded for further proceedings.
 
 
 24
 REVERSED and REMANDED.
 
 
 
 [1]
 See, e.g., Forman v. Lumm, 214 A.D. 579, 212 N.Y.S. 487 (1925) (calling law well-settled). See generally 33 Corpus Juris, Joint Adventures Secs. 2, 16 (1924) (summarizing doctrine and four elements); 30 Am.Jur. Joint Adventures Secs. 4, 6, 9-11 (1958) (same)
 
 
 [2]
 Compare W. Keeton, Prosser & Keeton on Torts Sec. 72 at 518, (5th ed.1984), with sources cited supra, note 1
 
 
 [3]
 Bertrand v. Forest Corp., 441 F.2d 809, 811 (5th Cir.), cert. denied, 404 U.S. 863, 92 S.Ct. 106, 30 L.Ed.2d 107 (1971)