698

ITEL CONTAINERS INTERNATIONAL CORPORATION, Flexi–Van Leasing Inc., Cross–County Leasing Ltd., now named Textainer Inc., & Textainer Special Equipment Ltd., Plaintiffs–Appellants,

v.

ATLANTTRAFIK EXPRESS SERVICE LTD., in personam, and M/V TAVARA, AES Express, AES Challenge, Nagara and Cavara, their engines, boilers, tackle, freights, etc., in rem, and Sea Containers Ltd., Seaco Services Ltd., Sea Containers Australia Ltd., Seaco Inc., and Sea Containers America Inc., in personam, Defendants–Appellees.

Nos. 1249, 1250, 1251, Dockets 90–7012, 90–7042 and 90–7044.

United States Court of Appeals, Second Circuit.

Argued April 25, 1990.

Decided July 16, 1990.

Alfred E. Yudes, Jr., New York City (Wendy D. Ciolino, Watson, Farley & Williams, New York City, on the brief), for plaintiff-appellant Itel Containers Intern. Corp.

O'Melveny & Myers, New York City (Andrew J. Frackman, Elisa L. Liang, New York City, of counsel), submitted a brief for plaintiff-appellant Flexi–Van Leasing, Inc.

Kirlin, Campbell & Keating, New York City (Michael D. Wilson, New York City, of counsel), submitted a brief for plaintiffs-appellants Textainer Inc. and Textainer Special Equipment Ltd.

Beth D. Jacob, New York City (James Gadsden, Barbara Q. Gray, Andris J. Vizbaras, and Drake A. Colley, Carter Ledyard & Milburn, New York City, on the brief), for appellees other than Atlanttrafik Express Service Ltd.

Before VAN GRAAFEILAND, NEWMAN and KEARSE, Circuit Judges.

KEARSE, Circuit Judge:

Plaintiffs Itel Containers International Corporation ("Itel"), *et al.*, appeal from a final judgment entered in the United States District Court for the Southern District of New York after a bench trial before Robert L. Carter, *Judge*, dismissing their complaint seeking recovery for losses incurred in leasing containers to defendant Atlanttrafik Express Service Ltd. ("AES Ltd."). The district court ruled principally that defendant Sea Containers Ltd. ("SCL") had no responsibility for debts of AES Ltd. *See* 725 F.Supp. 1303 (1989). On appeal, plaintiffs contend (1) that the court should have

found SCL liable on theories of joint venture, agency, or abuse of the corporate form; (2) that they were entitled to judgment against defendants M/V TAVARA, AES EXPRESS, AES CHALLENGE, NAGARA, and CAVARA (collectively the "vessels") on the basis of maritime liens; and (3) that they were entitled to a default judgment against AES Ltd. For the reasons below, we vacate and remand with respect to the vessels and AES Ltd., and in all other respects we affirm.

## I. BACKGROUND

The background of this litigation is set forth in detail in published opinions of the district court, *see* 725 F.Supp. 1303; 668 F.Supp. 225 (1987), familiarity with which is assumed. Briefly, the facts, as reflected in the largely unchallenged findings of the district court, are as follows.

SCL was engaged in the business of selling and leasing cargo containers and related equipment to ocean carriers. In 1984, SCL decided to purchase a shipping line (the "AES line") and its two ships, the NAGARA and the TAVARA. Since SCL did not wish to compete openly with its container customers, it decided to incorporate separate entities to buy and operate the line. SCL supplied the funds and legal fees for the creation of a company called Elliott Maritime, Ltd. ("Elliott Maritime"). The sole shareholder of Elliott Maritime was Arthur William Elliott, a business associate of SCL, who signed undated instruments by which his shares could be transferred to SCL upon its request. AES Ltd. was incorporated under the laws of England as a wholly owned subsidiary of Elliott Maritime, to be the holding company of the AES liner service. Atlanttrafik Express Service Inc. ("AES Inc."), was formed as a wholly owned subsidiary of AES Ltd. to operate the liner service.

SCL advanced AES Ltd. $3 million to purchase the AES line. AES Ltd. acquired the line in September 1984, and when its bank line of credit became operative, repaid the $3 million to SCL. SCL thereafter made loans to AES Ltd. to finance its operations. Through two wholly owned subsidiaries, SCL purchased the NAGARA and the TAVARA, which were then leased to AES Ltd. Two other ships owned by other SCL subsidiaries, the CAVARA and the AES EXPRESS, were also leased to AES Ltd. A fifth ship, the AES CHALLENGER, appears to have been leased by yet another SCL subsidiary and then subleased to AES Ltd. All five vessels were operated for AES Ltd. by AES Inc., whose employees had been employees of the prior owners of the AES line. AES Ltd. paid AES Inc. a fee for these services; AES Ltd. itself had no employees and was merely "a shell. Its sole function was to buy the liner service, and through loans and money earned on freights to finance the operation of the liner service, until it hopefully became a self-supporting enterprise." 725 F.Supp. at 1306.

Itel, plaintiff Flexi–Van Leasing Inc. ("Flexi–Van"), and plaintiffs Textainer Inc. and Textainer Special Equipment Ltd. (collectively "Textainer") were also engaged in the business of leasing cargo containers and related equipment to ocean carriers. They had leased equipment to the AES line prior to the formation of AES Ltd. and its purchase of the AES line. In the spring of 1984, the pending sale of the AES liner service to AES Ltd. was reported in the press, and SCL's involvement was rumored. In June and July of 1984, Flexi–Van, whose lease with the AES line was to expire on June 30, negotiated for a new lease and an extension of the existing lease with the then-owner of the line. It attempted to obtain SCL's guarantee of the leases. Similarly, when the sale to AES Ltd. was imminent and the then-owner of the line requested Itel's consent to the assignment of the lease to AES Ltd., Itel sought SCL's guarantee of AES Ltd.'s obligation on the lease.

SCL refused to give a guarantee to either lessor. Itel eventually entered into new leases with AES Ltd. The original Flexi–Van lease technically expired on June 30, 1984, but the equipment was not returned, and the lease was treated as if it had been extended; new Flexi–Van leases

covering additional containers took effect in July 1984.

In the fall of 1985, the AES operation "fell apart." 725 F.Supp. at 1308. AES Ltd. was deeply in debt and incurring large monthly losses. SCL refused to give further financial assistance, and AES Ltd. eventually went into liquidation in England. With AES Ltd. in bankruptcy, plaintiffs commenced actions in the district court to recover payment for the equipment rentals from SCL. They also asserted maritime liens against the defendant vessels.

Following consolidation of the actions and a bench trial, the district court dismissed the consolidated complaint. It found no agency or contractual relationship between SCL and the plaintiffs and no basis for piercing AES Ltd.'s corporate veil to hold SCL liable for AES Ltd.'s contractual obligations. Judgment was entered in favor of all defendants, and this appeal followed.

## II. DISCUSSION

On appeal, plaintiffs contend (1) that they were entitled to recover against SCL for the debts of AES Ltd. under any of several theories; (2) that their maritime liens against the five vessels should have been upheld; and (3) that they were entitled to a default judgment against AES Ltd. We reject the first contention and conclude that a remand is required with respect to the second and third.

### A. *The Claims Against SCL*

Plaintiffs advance three theories in support of their contention that SCL is liable for the damages that resulted when AES Ltd. ceased doing business and thereby breached the container leases. They contend that SCL should have been found liable (1) as a joint venturer with AES Ltd., or (2) as AES Ltd.'s principal, or (3) for such abuse of the corporate form as to warrant piercing the corporate veil. We find no merit in any of these arguments.

### 1. The Joint Venture Theory

■ Under New York law, which applies to this case, *see Itel Containers International Corp. v. Atlanttrafik Express Service Ltd.*, No. 86 Civ. 1313, slip op. at 12, 1988 WL 75262 (S.D.N.Y. July 13, 1988), a joint venture "is in a sense a partnership for a limited purpose, and it has long been recognized that the legal consequences of a joint venture are equivalent to those of a partnership." *Gramercy Equities v. Dumont*, 72 N.Y.2d 560, 565, 534 N.Y.S.2d 908, 911, 531 N.E.2d 629 (1988). Thus, for example, one coventurer will be bound by a lease signed by another coventurer, even if the first neither signed nor assented to the lease. *See Edison Stone Corp. v. 42nd Street Development Corp.*, 145 A.D.2d 249, 255–56 & 256 n. 3, 538 N.Y.S.2d 249, 252–53 & 253 n. 3 (1st Dep't 1989); *see also* N.Y. Partnership Law § 20(1) (McKinney 1988). Plaintiffs contend that the district court should have found that SCL and AES Ltd. were joint venturers in operating the AES line and that, under the above principles, SCL was liable for the container leases signed by AES Ltd. We conclude that the district court properly found that SCL was not party to a joint venture.

■ In order to form a joint venture, (1) two or more persons must enter into a specific agreement to carry on an enterprise for profit; (2) their agreement must evidence their intent to be joint venturers; (3) each must make a contribution of property, financing, skill, knowledge, or effort; (4) each must have some degree of joint control over the venture; and (5) there must be a provision for the sharing of both profits and losses. *See, e.g., Flammia v. Mite Corp.*, 401 F.Supp. 1121, 1127 (E.D.N.Y.1975), *aff'd without opinion*, 553 F.2d 93 (2d Cir.1977). All of these elements must be present before joint venture liability may be imposed. At least two elements were lacking in the present case.

The district court found that SCL did not intend to engage in a joint venture. Plaintiffs have pointed to no evidence to the contrary, and the record fully supports the view that SCL purposely used layers of corporations so that its involvement with

the AES line would be remote. Thus the second element listed above was not present. Further, the court found that SCL chose to operate through corporations in order to limit its losses to the amounts it was willing to advance in loans. Though SCL plainly hoped to share in whatever profits the AES line produced, there was no indication that it expected to share in the losses except as a lender to AES Ltd. Thus, the fifth element also was not present. Accordingly, assuming that the AES line was properly to be considered the "venture," the findings of the district court preclude the conclusion that it was an SCL joint venture.

Further, we note that the district court correctly found that AES Ltd. itself was not a joint venture because it was a corporation. A joint venture and a corporation are mutually exclusive ways of doing business. *See Arditi v. Dubitzky*, 354 F.2d 483, 486 (2d Cir.1965); *see also Chalmers v. Eaton Corp.*, 71 A.D.2d 721, 722, 419 N.Y.S.2d 217, 219 (3d Dep't 1979) (mem.) (joint venture is a business combination " ' "without any actual partnership or corporation designation" ' ") (quoting *Forman v. Lumm*, 214 A.D. 579, 583, 212 N.Y.S. 487 (1st Dep't 1925) (quoting Schouler, *Personal Property* [5th ed.] § 167a)). Though business associates may be treated as partners vis-a-vis one another even when they operate through a corporation, the corporate form is to be respected in dealings with third parties. *Arditi v. Dubitzky*, 354 F.2d at 486.

### 2. The Agency Theories

Plaintiffs also contend that SCL should have been held liable on the leases as a principal for which AES Ltd. was the agent. Though they assert that there was an express agency relationship, their argument appears to rely to a greater extent on the proposition that there was an implied agency. They further contend that the district court applied the wrong standard for determining whether an agency relationship existed, namely whether there was abuse of control. Though the district court does appear to have stated the wrong standard, on this record it nonetheless reached the correct result.

In concluding that "[t]he standard required to establish an agency relationship between SCL and AES [Ltd.] is the same as that required to pierce the corporate veil—abuse of control," 725 F.Supp. at 1310, the district court relied on the holding of another district court in *Kashfi v. Phibro–Salomon, Inc.*, 628 F.Supp. 727, 735 (S.D.N.Y. 1986). The *Kashfi* court, however, enunciated that standard for determining agency relationships as they might exist between related corporations, *i.e.*, those with overlapping shareholders, officers, or directors, stating that to impose any other standard would undermine the presumption that corporations are separate entities whose form is to be respected.

Whether or not that view is correct is a question we need not reach here, for we are dealing with corporations that are not formally related. SCL and AES Ltd. were not parent and subsidiary; nor did they have any shareholders, officers, or directors in common. Accordingly, we look to the traditional tests of actual and implied agency.

An express agency is created "by written or spoken words or other conduct of the principal which, reasonably interpreted, causes the agent to believe that the principal desires him so to act on the principal's account." *Restatement (Second) of Agency* § 26 (1958) (*"Restatement"*). Whether such an agency is formed depends on the actual interaction between the putative principal and agent, not on any perception a third party may have of the relationship.

Plaintiffs point to various activities of SCL that might perhaps have been thought by others to establish an agency relationship in some respect. There was no evidence, however, that SCL actually authorized AES Ltd. to act as its agent or that it in any way led AES Ltd. to believe AES Ltd. was so authorized. SCL made clear from the start its intention to utilize the corporate form for AES Ltd. so as to limit SCL's liability. SCL did provide fi-

nancing to AES Ltd., but AES Ltd. was meant to, and did, operate independently. SCL chose not to be a shareholder, and no SCL employee sat on AES Ltd.'s Board of Directors. The record simply would not have supported a finding that SCL authorized AES Ltd. to act on its behalf.

■ Implied agency, in contrast, depends not on the actual relationship between principal and agent but on the reasonable conclusion of a third party, derived from actions of the principal, that the person acting has authority to do so from the principal. "[A]pparent authority to do an act is created as to a third person by written or spoken words or any other conduct of the principal which, reasonably interpreted, causes the third person to believe that the principal consents to have the act done on his behalf by the person purporting to act for him." *Restatement* § 27. Thus, in order to determine whether there was implied authority, the court must focus on the acts of the principal in relation to the third party. *See Ford v. Unity Hospital*, 32 N.Y.2d 464, 473, 346 N.Y.S.2d 238, 244, 299 N.E.2d 659 (1973); *General Overseas Films, Ltd. v. Robin Int'l, Inc.* 542 F.Supp. 684, 698 (S.D.N.Y.1982), *aff'd without opinion*, 718 F.2d 1085 (2d Cir.1983).

■ Though plaintiffs argue that the actions of SCL reasonably led them to believe that SCL was AES Ltd.'s principal, the record refutes their claims. Under New York law, "[o]ne who deals with an agent does so at his peril, and must make the necessary effort to discover the actual scope of authority." *Ford v. Unity Hospital*, 32 N.Y.2d at 472, 346 N.Y.S.2d at 244. Whatever the possibility that some of SCL's actions may have given outsiders the impression that AES Ltd. was running the AES line on behalf of SCL, the scope of any such implied authority plainly could not be deemed to have extended to the one set of AES Ltd. actions that is pertinent here, *i.e.*, the execution of the container leases. Both Itel and Flexi–Van, in the course of negotiating the leases with AES Ltd., communicated directly with SCL in an attempt to get SCL to take responsibility for the leases. SCL flatly refused to do so.

Neither these plaintiffs nor Textainer (which does not appear to have communicated with SCL when negotiating its leases) point to any action by SCL that they could reasonably have interpreted as authorizing AES Ltd. to enter into the leases on behalf of SCL.

We conclude that the record belies plaintiffs' contentions that SCL actually or impliedly authorized AES Ltd. to enter into the container leases as agent for SCL.

### 3. The Corporate Veil

■ Finally, plaintiffs contend that SCL should have been held liable for AES Ltd.'s debts on the theory that SCL's control over AES Ltd. constituted an abuse of the corporate form that justified piercing the corporate veil. The district court, in rejecting this claim, stated that to succeed on such a theory, plaintiffs would have to show, *inter alia*, (a) that SCL's control over AES Ltd. and/or AES Inc. had been so complete that the latter companies had no separate existence, and (b) that SCL had used that domination to perpetrate a fraud on plaintiffs. Though New York law allows the corporate veil to be pierced *either* when there is fraud *or* when the corporation has been used as an alter ego, we find no basis for reversal.

■ In *Gartner v. Snyder*, 607 F.2d 582, 586 (2d Cir.1979), we noted that

[b]ecause New York courts disregard corporate form reluctantly, they do so only when the form has been used to achieve fraud, or when the corporation has been so dominated by an individual or another corporation ..., and its separate identity so disregarded, that it primarily transacted the dominator's business rather than its own and can be called the other's alter ego.

Similarly, in *Kirno Hill Corp. v. Holt*, 618 F.2d 982, 985 (2d Cir.1980), we stated:

The prerequisites for piercing a corporate veil are ... clear ...: [the defendant] must have used [the corporation] to perpetrate a fraud or have so dominated and disregarded [the corporation's] corporate form that [the corporation] pri-

marily transacted [the defendant's] personal business rather than its own corporate business.

*See also Walter E. Heller & Co. v. Video Innovations, Inc.,* 730 F.2d 50, 53 (2d Cir. 1984) (listing perpetration of fraud as one of the criteria jury could consider in determining whether to pierce the corporate veil). Mere use of the corporate form to avoid liability is insufficient to warrant piercing the veil. *See Gartner v. Snyder,* 607 F.2d at 586.

The district court's rejection of plaintiffs' claim was consistent with these principles, for the court not only found that plaintiffs had failed to show any fraud by SCL but also found that they had failed to show sufficient control and domination by SCL of AES Ltd. or of AES Inc. to make either of them SCL's alter ego. These findings are not clearly erroneous.

The record shows that AES Inc. was responsible for the everyday affairs of the AES line and that SCL did not interfere. AES Ltd. observed the corporate formalities, including holding board meetings, and its shareholder, Elliott Maritime, was independent of SCL. While SCL had the power to acquire Elliott Maritime from Elliott and had a representative on a steering committee established to formulate policy for the shipping line, plaintiffs did not show that SCL dominated AES Inc. or AES Ltd. or used its position to have its own loans to AES Ltd. repaid in preference to those of other AES Ltd. creditors. For example, the record includes evidence that AES Ltd. refused, despite SCL's importuning, to give preferential treatment to SCL containers; that in a dispute over whether to retain the president of AES Inc., SCL's view was overruled; and that when AES Ltd. received a $6 million payment from the former owner of the AES line to close a shortfall in the represented working capital, the money was used to pay off some of AES Ltd.'s outstanding bills, including bills from plaintiffs, but no part of the payment was used to reduce the amount owed to SCL.

In sum, we conclude that plaintiffs have presented no tenable theory for holding SCL liable for the debts of AES Ltd. The district court properly dismissed the claims against SCL.

**B. *The Maritime Lines***

■ Plaintiffs contend that the district court erroneously dismissed their maritime liens against the five vessels. We are unable to review this contention because the district court made no findings with respect to these liens. In an earlier opinion, reported at 668 F.Supp. 225, the court had denied a motion by the vessel owners for partial summary judgment on the validity of the liens. It found that under the relevant statute, 46 U.S.C.App. § 971 (repealed effective Jan. 1, 1989), plaintiffs' leasing of containers and chassis to AES Ltd. constituted the furnishing of necessaries to a vessel. However, it held that there were genuine issues of material fact as to whether "the equipment was used outside maritime commerce," *id.* at 230, and whether at least one plaintiff, Flexi–Van, "relied on the creditworthiness of AES [Ltd.], rather than the security interest in the vessels themselves, when they entered into the leases," *id.* at 230 n. 6. The court concluded that if the vessel owners could prove either of these contentions at trial, they would defeat the maritime liens. The court's final opinion in the case, however, merely contained a broad statement that all of plaintiffs' claims were dismissed, without including any specific statement about the maritime liens.

In any case tried without a jury, the court is required to state findings of facts and conclusions of law. *See* Fed.R.Civ.P. 52(a). This requirement exists, in part, to permit effective appellate review of trial court decisions. Since the district court made no findings on the matter of the maritime liens, we are unable to evaluate plaintiffs' contention that the liens were erroneously dismissed.

Accordingly, we vacate the judgment insofar as it dismissed plaintiffs' claims against the vessels, and we remand to the district court for findings of facts and conclusions of law on those claims.

## C. *The Default of AES Ltd.*

■ Plaintiffs also brought this suit against AES Ltd., which had signed the container leases; their claims against AES Ltd. are independent of their claims against SCL. AES Ltd. apparently was served, but never officially appeared, though it did give a deposition and produce documents. Even participation in discovery appears to have ceased in April 1986, when AES Ltd. was put into voluntary liquidation by its shareholder. Plaintiffs asked the district court to enter a default judgment against AES Ltd., and they contend here that the failure to enter such a judgment, and the dismissal of their claims instead, were error. Though we are inclined to agree, we are again hampered by the lack of any explication by the district court, which prevents our reaching a definitive conclusion.

The district court found that plaintiffs entered into leases with AES Ltd., and there seems to be no question that it failed to continue payments on the leases. Thus, the facts as found by the district court would seem to support a judgment against AES Ltd. even if it had not defaulted. We note that the AES Ltd. liquidation proceedings were brought in England, and that the United States bankruptcy laws therefore did not afford protection against litigation automatically, *see* 11 U.S.C. § 362 (1988), and we have seen no indication in the record that any representative of the corporation applied for protection in the bankruptcy court against proceedings in this country, *see id.* § 304.

The district court made no statement as to why plaintiffs' request for a default judgment was denied. Accordingly, we vacate the judgment dismissing plaintiffs' claims against AES Ltd., and we remand to permit the court either to enter a default judgment against AES Ltd. or to explain why such a default should not be entered.

## CONCLUSION

We have considered all of the parties' arguments on this appeal. For the foregoing reasons, the judgment of the district court (1) is vacated insofar as it dismissed plaintiffs' maritime liens against the ves-

sels, and the matter is remanded for findings of fact and conclusions of law; (2) is vacated insofar as it dismissed plaintiffs' claims against AES Ltd., and the matter is remanded for entry of a default judgment against AES Ltd. or for a statement as to why no such judgment is appropriate; and (3) in all other respects is affirmed.

SCL shall recover its costs against plaintiffs; other costs shall abide further action in the district court.