**Marcus GOLDEN, Plaintiff-Appellant,**

v.

**ROWAN COMPANIES, INC., and Aetna Casualty & Surety Company, Defendants-Appellees.**

**No. 85–3047**
**Summary Calendar.**

United States Court of Appeals,
Fifth Circuit.

Dec. 12, 1985.

Darryl J. Carimi, Gretna, La., for plaintiff-appellant.

Hailey, McNamara, McNamara & Hall, Richard A. Chopin, Thomas M. Richard, Metairie, La., for defendants-appellees.

Before JERRE S. WILLIAMS, GARWOOD and E. GRADY JOLLY, Circuit Judges.

E. GRADY JOLLY, Circuit Judge.

In this Jones Act case, the appellant, Marcus Golden, contends that the district court applied the wrong legal standard when it granted the defendant's motion for a directed verdict on the issue of whether Golden was a seaman. Golden argues that the determination of seaman status in this case, as in all "but the rarest cases," was for the jury to decide. Because we find that the district court applied the proper standard and that Golden is not entitled to seaman status, we affirm.

I.

Golden was injured while working on Rowan's Drilling Rig 6 in the Gulf of Mexico. At all relevant times, Rig 6 was located on a stationary platform and was attended by Tender II, an adjacently anchored vessel that provided living facilities for the rig workers and supplied drilling mud, water, and fuel for the rig. The parties agree and the court found that the rig is not a vessel within the meaning of the Jones Act, but that the tender is a vessel. The tender crew included a maintenance man, diesel operators, cooks, a lugman, and roustabouts, while the rig crew was composed of a driller, a motorman, a derrick man, and floor hands.

Golden's first job with Rowan was on the tender as a diesel operator trainee. A diesel operator (D.O.) maintains the diesel engines, air compressors, and other mechanical equipment on the tender, and assists in loading supplies. Golden worked as a D.O. trainee for ten days but then was assigned to the position of motorman on the rig. He remained a motorman until the date of the accident, approximately four months later. When he filed for compensation after the accident, he declared his occupation as "Motor Man."

Golden's main job responsibilities as motorman were to maintain the motors, engines, and machinery on the rig. Golden concedes that he was a member of the rig crew and did most of his work on the rig. He contends, however, that he is entitled to seaman's status because he also performed various tasks of short duration on the tender, a "vessel" under the Jones Act, during his working hours as a motorman.[1]

George Markley, a tender crane operator, testified for Golden that job titles did not determine job duties and that every person worked wherever he was needed. Although his duties as a crane operator required him to be on the tender, Markley also worked on the rig as a roughneck when the rig superintendent told him to. On the other hand, Sam Chapman, superintendent of the entire operation when Golden was injured, testified that he permanently assigned workers either to the rig or to the tender and that he had permanently assigned Golden to the rig as a motorman. Chapman also testified that if something unusual needed to be done, "[i]f we were going to move the tender away or something like that," he would ask people from various job positions to help out on that particular task, but that he would not ask an on-duty motorman to assist because of the importance of the motorman's duty to constantly watch the motors on the rig floor.

At the close of Golden's case, Rowan moved for a directed verdict on the issue of seaman status. The district found[2] that Golden's primary duties were as a motorman and that only from time to time did he perform duties on board the tender. The court then granted Rowan's motion for a directed verdict, relying on *Prinzi v. Keydril*, 738 F.2d 707 (5th Cir.1984); *Longmire v. Sea Drilling Corp.*, 610 F.2d 1342 (5th Cir.1980); and *Offshore Co. v. Robison*, 266 F.2d 769 (5th Cir.1959). Golden filed a timely appeal.

## II.

Golden contends that the district court erred by applying the standard from *Wallace v. Oceaneering International*, 727 F.2d 427 (5th Cir.1984), when it ruled on the motion for directed verdict. He claims that the court should have applied the standard from *Roberts v. Williams-McWilliams Co.*, 648 F.2d 255, 261 (5th Cir.1981), and that that standard requires that a motion for directed verdict regarding Jones Act status be granted "only when there is a complete absence of probative facts to support the non-movant's claim." *Roberts*, however, cites *Boeing Co. v. Shipman*, 411 F.2d 365, 370 (5th Cir.1969) (en banc) and notes that *Boeing* indicates that the "complete absence of probative facts" standard[3] is to be used in Jones Act *negligence* questions. Judge Brown, writing for the court in *Roberts*, goes on to say that where the record demonstrates that "reasonable persons could not draw conflicting inferences leading to a different conclusion," the district court should decide the question as a matter of law. *Roberts*, 648 F.2d at 261. Three years later, this court, again speaking through Judge Brown, stated that "[a]lthough the language in the[ ] cases var[ies] somewhat, ... a motion for a directed verdict denying Jones Act seaman status should be judged, as in *Boeing*, by *whether there was a reasonable evidentiary basis for a jury finding that the plain-*

---

1. According to Golden, some examples of these tasks are: (1) he repaired the tender's air compressors for "about two days;" (2) he overhauled the diesel engines for about six hours one day; (3) he repaired refrigeration units for "two to three hours" and repaired air conditioning units for a few hours; (4) he organized storage rooms for about six hours a day for two days; and (5) he occasionally took rig equipment to the toolroom or storeroom on the tender to work on it there.

Golden also testified that during a routine day he went to the tender six or seven times, including visits for meals and to use the bathroom.

2. The district judge stated his findings from the bench when he granted Rowan's motion for directed verdict.

3. This standard is the same as that used in cases under the Federal Employers' Liability Act, 45 U.S.C. § 51, *et seq. Comeaux v. T.L. James & Co.*, 666 F.2d 294, 298 n. 3 (5th Cir.1982).

*tiff was a seaman."* *Wallace,* 727 F.2d at 432 (emphasis added).

■ Because the issue before the district court here was whether the plaintiff was a seaman, it applied the *Boeing* standard in ruling on Rowan's motion for directed verdict, and we hold, in accordance with *Wallace,* that it was correct in doing so.

### III.

Golden next contends that he is entitled to seaman status because he was permanently assigned to a vessel (the tender), he performed substantial work aboard that vessel, and the duties which he performed contributed to the function of the vessel, to the accomplishment of its mission, and to its maintenance and welfare. *See Robison,* 266 F.2d at 779. We disagree.

■ First we note that the district court was correct to apply the *Robison* standard in Golden's case, as *Robison* is still the law of this circuit. *Prinzi v. Keydril,* 738 F.2d 707, 709 (5th Cir.1984). *Robison's* two-part test grants seaman status to an individual if he (1) has a permanent connection to the vessel *or* performs a substantial part of his work on the vessel, *and* (2) if the duties he performs contribute to the function of the vessel, to the accomplishment of its mission, or to its maintenance during its movement or anchorage. *Prinzi,* 738 F.2d at 709; *Bertrand v. International Mooring & Marine, Inc.,* 700 F.2d 240, 243–44 (5th Cir.1983), *cert. denied,* 464 U.S. 1069, 104 S.Ct. 974, 79 L.Ed.2d 212 (1984). We now turn to the question whether Golden meets the first prong of the *Robison* test.

### A.

The first part of the *Robison* test is satisfied when a plaintiff shows either that he was permanently assigned to a vessel or that he performed a substantial part of his work on the vessel. *Prinzi,* 738 F.2d at 709. We have held that a rig worker who "indicated that his primary responsibilities concerned drilling operations on the drilling rig and platform, and that most of his work

aboard the tender was only incidental thereto" was not permanently assigned to the tender. *Longmire v. Sea Drilling Corp.,* 610 F.2d 1342, 1346 (5th Cir.1980). The facts that Golden lived on the tender and that some of his tools and machine parts were stored there do not mean that he was permanently assigned to the tender. Because of the symbiotic relationship between the tender and the rig, Golden's performance of his duties necessarily carried him onto the tender from time to time. *Longmire,* 610 F.2d at 1346. Like the plaintiff in *Longmire,* Golden was assigned to tasks aboard the tender irregularly; whether or not he worked there depended upon the status of his work aboard the rig. *Longmire,* 610 F.2d at 1347. The district court was correct to conclude that under the relevant case law Golden was not permanently assigned to the tender.

Golden may still meet the first prong of the *Robison* test if he is able to show that he performed a substantial portion of his work on the tender. On this point, Golden relies on many of the same factors that he uses in his "permanently assigned" argument. He mentions the specific repairs and work done while on the tender and emphasizes that it was part of his "normal activity" to work in the tool room or store room on the tender.

■ In order to meet this part of the test, however, Golden must show that he performed "a significant part of his work aboard the ship with at least some degree of regularity and continuity." *Owens v. Diamond M Drilling Co.,* 487 F.2d 74, 75 (5th Cir.1973); *Keener v. Transworld Drilling Co.,* 468 F.2d 729, 732 (5th Cir. 1972). In Golden's case, the specific tasks that he testified he had performed on the tender were clearly irregular and fortuitous.[4] Except for his once organizing the tender's storage room, each task dealt with an emergency situation which arose unexpectedly. Even if these emergency tasks may have been essential to the mission of the drilling rig and tender, that fact does

---

**4.** *See* the list in note 1 above.

not cause them to be a "substantial portion" of Golden's overall job duties. We agree with the district court that Golden performed no work aboard the tender with any degree of regularity and continuity, and that he therefore does not meet the "substantial portion" aspect of the *Robison* test.

### B.

The second prong of the *Robison* test asks whether the plaintiff's work contributed to the function of the vessel, to the accomplishment of its mission, or to its maintenance and welfare. *Robison,* 266 F.2d at 779. We do not reach this question regarding Golden because he has failed to adduce sufficient evidence that he was entitled to seaman status either by having been permanently assigned to the tender or by having performed a substantial part of his work on the tender. Since the two prongs of *Robison* are in the conjunctive, the plaintiff loses his seaman status claim as soon as it is shown that he failed to meet the first prong.

The district court's entry of directed verdict against Golden on the issue of seaman status is

AFFIRMED.