William M. TAYLOR, et al.

v.

GETTY OIL COMPANY, et al.

Civ. A. No. 85–2439.

United States District Court,
E.D. Louisiana.

June 16, 1986.

---

Randy Ungar, Ungar, Wheelan & Dunn, New Orleans, La., for plaintiff.

Jeanmarie Lococo, Grady S. Hurley, Jones, Walker, Waechter, Poitevent, Carrere & Denegre, New Orleans, La., for defendants.

## ORDER AND REASONS

PATRICK E. CARR, District Judge.

The Reurged Motion of Elf-Aquitaine, Inc. and InterNorth, Inc. for Summary Judgment came before the Court for oral argument on Wednesday, April 30, 1986. After considering the memoranda and arguments of the parties, as well as the applicable law, the Court finds that the motion for summary judgment should be granted for the following reasons.

This suit was brought by Mr. and Mrs. William M. Taylor and by Mrs. Donald Stringfellow, individually and as personal representatives of the estate of Donald Stringfellow, alleging that on May 13, 1984, William Taylor was injured and Donald Stringfellow was killed when the offshore platform on which they were working exploded and caught fire. The platform in question, Platform "A", West Cameron Block 405, was located on the Outer Continental Shelf ("OCS") off the coast of Louisiana and was jointly owned by Getty Oil Company[1] ("Getty"), Elf-Aquitaine, Inc. ("Elf"), and InterNorth, Inc. ("InterNorth"). Operation of the platform was conducted pursuant to an Operating Agreement dated September 1, 1975.[2]

■ Because the incident in question occurred on a fixed platform on the OCS, the Outer Continental Shelf Lands Act ("OCSLA") applies. 43 U.S.C. § 1333(a)(1). The OCSLA calls for the application of the Longshoremen's and Harbor Worker's Compensation Act ("LHWCA") for disability or death of an employee resulting from injuries stemming from operations conducted on the OCS for exploration, development, removal or transportation of natural resources. 43 U.S.C. § 1333(b). The LHWCA provides the exclusive remedy of the employee, his spouse and children against the employer who complies with the Act. 33 U.S.C. § 905(a). *Moragne v.*

1. Getty was dismissed from this litigation on motion for summary judgment based on Getty's status as the employer of Taylor and Stringfellow.

2. The original parties to the Operating Agreement were Skelly Oil Company (predecessor in interest to Getty), Texasgulf, Inc. (predecessor in interest to Elf), and Northern Natural Gas Company (predecessor in interest to InterNorth).

*States Marine Lines, Inc.,* 398 U.S. 375, 90 S.Ct. 1772, 1784, 26 L.Ed.2d 339 (1970). A partnership created by an operating agreement may be classified as an employer under the LHWCA so as to afford the Act's exclusive remedy provisions to non-operators. *Bertrand v. Forest Corp.,* 441 F.2d 809 (5th Cir.1971), *cert. denied,* 404 U.S. 863, 92 S.Ct. 106, 30 L.Ed.2d 107 (1971).

Elf and InterNorth contend that they are joint venturers with Getty and as such are entitled to tort immunity as employers of Taylor and Stringfellow. Under the OCS-LA, state law is applied to determine whether a joint venture should be treated like a partnership. 43 U.S.C. § 1333(a)(2)(A).

In Louisiana a joint venture is defined as "an undertaking by two or more persons to combine their property, capital, labor, or skill in any combination of these elements in the conduct of a particular line of trade or general business for joint profits, thus creating the status of a partnership, although the facts may not show a formal partnership." *Huffman Technical Drilling, Inc. v. Smith,* 424 So.2d 435, 438 (La. App. 5th Cir.1982); *Whittington v. Sowela Technical Institute,* 438 So.2d 236 (La. App. 3rd Cir.1983). In order to form a joint venture, the following elements are required:

(1) All parties must consent to the formation of a partnership.

(2) There must be a sharing of profits and losses of the venture. ·

(3) Each party must have some proprietary interest in, and be allowed to exercise some right of control over, the business.

*Josephs v. Austin,* 420 So.2d 1181, 1184 (La.App. 5th Cir.1982), *cert. denied,* 427 So.2d 870; *Marine Services, Inc. v. A–1 Industries,* 355 So.2d 625, 628 (La.App. 4th Cir.1978).

With these legal principles in mind, a study of the Operating Agreement among Getty, Elf and InterNorth reveals that the parties did, in fact, form a joint venture. The contract evinces an intention by the parties to combine their resources in order to conduct a business of exploration and development of minerals. The mineral lease was owned jointly by the parties in the following proportions: Getty—50%; Elf—25%; InterNorth—25% (¶ III.A). The obligations under the agreement were to be shared by the parties in the same proportions that production was owned (¶ III.B). While Getty was designated as the Operator for the venture (¶ V.A) with exclusive responsibility for the drilling, development and producing operations (¶ VI.A) and was charged with securing all labor (¶ VI.B), Getty was obligated to keep records of expenditures for examination and inspection of Elf and InterNorth (¶ VI.C).

Each party was to bear its proportionate share of development and operation costs and expenses (¶ VII.A), and Getty could not make a single expenditure in excess of $25,000 without the written consent of Elf and InterNorth (¶ VII.B). Plans for future operations had to be approved by all parties (¶ VIII).

Additionally, Getty was obligated to purchase a workmen's compensation insurance policy for the benefit and protection of Elf and InterNorth (¶ XII.A). All other insurance required the unanimous agreement of the parties (¶ XII.B). Getty was also charged with the responsibility of informing Elf and InterNorth of any claims whose potential exposure may exceed the insurance limits and upon request, would supply information regarding accident reports, suits, claims, etc. (¶ XII.D). Each party was required to inform the others of any suits arising out of operations on the jointly owned lease (¶ XIII.A) and defense of such suits was to be handled by a committee of staff attorneys representing all parties (¶ XIII.B). Suits could not be settled without the consent of all parties (¶ XIII.B).

Plaintiffs urge the Court to find that Elf and InterNorth were not involved in a joint venture with Getty based on the language of Paragraph XXI entitled "Relationship of Parties" which provides as follows:

A. It is distinctly understood and agreed that this Agreement shall not in any manner create the relationship of a partnership, an association for profit between the parties or any other legal entity for any purpose between the parties, and no act done by either party pursuant to the provisions hereof shall operate to create such relationship, nor shall the provisions of this Agreement be construed as creating such relationship. The liability of the parties shall be several and not joint or collective, and each party shall be responsible only for its obligations as herein set forth and shall be liable only for its proportionate share of the costs, expenses and liabilities incurred hereunder.

In construing a contract, the Court must seek to ascertain the true intentions of the parties by examining the entire writing in order to harmonize and give effect to all the provisions of the contract so that none will be rendered meaningless. *Chapman v. Orange Rice Mill Co.*, 747 F.2d 981 (5th Cir.1984). The legal relationship of the parties is not governed exclusively by the terms used by the parties to designate the relationship. *Frazell v. United States*, 213 F.Supp. 457 (W.D.La.1963) *rev'd on other grounds*, 335 F.2d 487 (5th Cir.1964), *cert. denied*, 380 U.S. 961, 85 S.Ct. 1104, 14 L.Ed.2d 152 (1965); *Haley v. Commissioner of Internal Revenue*, 203 F.2d 815, 818 (5th Cir.1953); *West v. Kerr-McGee Corp.*, 586 F.Supp. 493 (E.D.La.1984), *rev'd on other grounds*, 765 F.2d 526 (5th Cir. 1985).[3] When the parties make an agreement defined by law as a partnership or joint venture, it is a partnership joint venture even though the parties did not intend that their agreement should be so called. *Graham Co. v. Lewis*, 159 La. 151, 154, 105 So. 258, 259 (La.1925); *Fossier v. American Printing Co.*, 130 So.2d 529, 532–33 (La.App. 4th Cir.1961); *West, supra* at 497.

The ultimate criterion is whether the parties intended to enter into a joint venture, and to make that determination the Court must view the totality of evidence. *Frazell, supra.* In this case, the contract as a whole and the uncontroverted affidavits of representatives of Getty, Elf and Inter-North clearly establish that the parties intended to form a joint venture.

Accordingly, IT IS ORDERED that the Motion of Elf-Aquitaine, Inc. and Inter-North, Inc. for Summary Judgment be and the same is hereby granted, dismissing plaintiffs' suit against them with prejudice and with costs.

---

**3.** The case at bar is factually similar to *West* in which the platform on which West was injured was jointly owned by Kerr-McGee and three minority interest owners. West was not, however, directly employed by Kerr-McGee, but rather by an independent contractor. The defendants contended that West was the borrowed employee of their joint venture. The Fifth Circuit reversed the district court's determination that West was a borrowed servant and did not reach the issue of the immunity of the joint venturers. There is no borrowed employee issue in the case at bar.