Kraig FUNDERBURK

v.

MAINTENANCE ASSOCIATES, INC., Aetna Life & Casualty Company, Chevron USA, Inc., Lady Lou, Inc., Offshore Trading Corporation, Admiral Life Insurance Company.

Civ. A. No. 84–4240.

United States District Court,
E.D. Louisiana.

July 11, 1986.

Charles W. Dittmer, Jr., Domengeaux & Wright, New Orleans, La., for plaintiff.

Antonio E. Papale, Jr., Hailey, McNamara, Hall, Larmann & Papale, Metaire, La., Richard House, Jr., Andrew Podolnick & George B. Jurgens, III, of Milling, Benson, Woodward, Hillyer, Pierson & Miller, New Orleans, La., Cliffe Laborde, Lafayette, La., for defendants.

## ORDER AND REASONS

FELDMAN, District Judge.

IT IS ORDERED:

Chevron and Maintenance Associates, Inc. have filed motions for summary judgment. Both parties attack seaman status, and Chevron also seeks to be dismissed from this case on the ground that it cannot be held liable for the negligence of an independent contractor. Chevron's Motion for Summary Judgment on the question of its negligence is GRANTED. The joint motion for summary judgment on the question of seaman status is DENIED.

The facts are not in dispute. Plaintiff, a sandblaster sues his employer, Maintenance Associates, Inc., Chevron (the platform owner) and several other defendants for injuries sustained while he was sandblasting on a Chevron fixed platform off the coast of Louisiana. He sues MAI as the Jones Act employer, and has asserted a maritime cause of action against the other defendants.

On March 14, 1984 Chevron entered into an agreement with MAI in which MAI agreed to provide labor and equipment for sandblasting and painting work to be done on a Chevron fixed platform. The contract made MAI an independent contractor. On November 13, 1983, the date of the accident, MAI was performing the contract work on the Chevron platform. At all times, MAI's progress and the quality of its work were monitored by another contractor hired to inspect MAI's work. The inspector is not a party to this litigation. The MAI crew, of which plaintiff was a

member, was indisputably under the direction and supervision of the MAI project foreman, and no one else.

Part of the work required the MAI crew to sandblast and paint the underside of the fixed platform.

On the day of the alleged accident, plaintiff was ordered by the MAI foreman to assist in sandblasting the underside of the platform. Plaintiff claims that the foreman instructed him to do the work without rigging up scaffolding, and that the injuries he sustained would not have occurred except for the failure to rig up scaffolding. Plaintiff was struck with a hose and some other material, and injured his knee.

Plaintiff's allegations of negligence do not implicate Chevron. Plaintiff concedes that no Chevron personnel were on the structure at the time of the injury, and did not supervise, control or otherwise direct the manner in which the work was done on a daily basis. It is elementary that a principal who does not exercise operational control over the manner of an independent contractor's performance may not be held liable for the negligent acts committed by that contractor in the course of its duties. And the principal has no duty to insure, through instructions or supervision, that the independent contractor will perform its obligations in a reasonably safe manner. *Hyde v. Chevron, U.S.A., Inc.*, 697 F.2d 614, 630 (5th Cir.1983) makes the point well:

> "Under our well established law, an owner is not liable to third parties for the negligent acts of a contractor where the contractor undertakes performance of a work pursuant to a contract in which the owner furnishes plans and specifications, and possesses only the right to insist that the job be performed in accordance with the contract plans and specifications."

See also *Cornish v. Ford, Bacon & Davis Construction Corp.*, 304 So.2d 361 (La. App.1974).

The plaintiff contends that Chevron is nevertheless liable because it breached an independent duty owed to the plaintiff by urging MAI to hurry the completion of the job. No legal support is offered for the creation of such an alleged duty. The imposition of such a duty would be inconsistent with the law respecting the relationship between principal and independent contractor, which permits the principal "to insist that the job be performed in accordance with the contract plans and specifications" without the threat of liability. *Cornish, supra* at 366. Simply stated, the law does not support the proposition that a principal's admonition to an independent contractor to complete the work as expediently and quickly as possible constitutes some kind of actionable negligence. And as plaintiff candidly concedes, it is usual and customary for companies to ask that the job be done as quickly and as efficiently as possible.

But even if plaintiff's claim against Chevron does implicate some claim of actionable negligence, plaintiff has failed to offer any credible evidence in support of its theory of liability against Chevron. Although plaintiff answered an interrogatory that "Chevron instructed its contractors to hurry the job thereby placing undue stress on them to ignore proper safety practices in order to meet the ever-increasing demands of speed", plaintiff admitted in a deposition that he never personally received such instructions from any Chevron personnel and did not witness any Chevron employee give such instructions. Rather, plaintiff's sole basis for that contention is what was told to him by the MAI foreman and an inspector who was working for another subcontractor who is not a party to this case. We have nothing but speculation and hearsay on which to rely. According to the plaintiff, those two individuals told him that Chevron was only going to let the best crew keep working, and that Chevron wanted the job done right and as quickly as possible. Further, plaintiff testified that they wanted to keep the contract with Chevron and that it was the MAI foreman and painting inspector who told the plaintiff to ignore safety practices; there is no evidence that Chevron ever gave such an instruction. To the contrary, Chevron offers sworn testimony stating that at no time did Chevron give instructions to MAI

to ignore safety in order to complete the job.

■ Rule 56(e) of the Federal Rules of Civil Procedure places an unequivocal burden on the plaintiff to "set forth specific facts showing that there is a genuine issue for trial" and requires that plaintiff do so with supportable evidence. Plaintiff has not done so. See *Fontenot v. Upjohn Company*, 780 F.2d 1190 (5th Cir.1986). Instead, plaintiff seeks to discharge his Rule 56 burden by offering vague, conclusory allegations which are unsubstantiated in the record. Such material is simply not competent to serve as evidence sufficient to create a genuine issue of material fact in dispute for summary judgment purposes. See *Vidrine v. Enger*, 752 F.2d 107 (5th Cir.1984) (plaintiff's response to interrogatory was based on pure hearsay and could not be used to controvert defendant's affidavits); *Sires v. Luke*, 544 F.Supp. 1155 (S.D.Ga.1982) (the use of depositions on a Rule 56 motion must be limited to those statements based on personal knowledge and not hearsay); *Sims v. Mack Truck Corp.*, 488 F.Supp. 592 (E.D.Pa.1980) (testimony based upon double hearsay was insufficient). Thus, summary judgment is appropriate as to plaintiff's claim that Chevron was at fault.

■ On the other hand, on the issue of plaintiff's status as a Jones Act seaman, the sworn deposition testimony of plaintiff raises sufficient genuine issues of material fact which render inappropriate summary judgment treatment of that issue. See *Barrett v. Chevron U.S.A., Inc.*, 781 F.2d 1067 (5th Cir.1986); *Golden v. Rowan Companies, Inc.*, 778 F.2d 1022 (5th Cir. 1985); *Munguia v. Chevron Co., U.S.A., Inc.*, 768 F.2d 649 (5th Cir.1985); *Coulter v. Texaco, Inc.*, 714 F.2d 467 (5th Cir.1983). It is instructive to note that in *Golden, supra*, this Court granted a directed verdict against plaintiff after hearing evidence on similarly asserted fact issues. But *Golden* was not a summary judgment case.[1] Also, in *Coulter*, the unrebutted

evidence seemed to establish that the vessel involved in that case was equipped with tools and cranes to the extent that the vessel was more than a mere source of transportation and, further, it was also indisputably established that plaintiff performed a substantial part of his work on the vessel in furtherance of its mission. Those facts are hotly controverted in this case and cannot be resolved by way of summary judgment.

Accordingly, for the foregoing reasons,

IT IS ORDERED:

Chevron's Motion for Summary Judgment on the question of its negligence is GRANTED.

The joint Motion by Chevron and Maintenance Associates, Inc. for Summary Judgment on the question of seaman status is DENIED.

---

1. Thus, the Court cannot predict the outcome of this issue until the evidence similarly unfolds as it did in *Golden*. As a result of the seriousness of the status issue, however, the question of seaman status will be bifurcated from the other issues in this trial and will be tried prior to the trial of issues of liability and damages.