**Chris HEAVIN and Kim Heavin**

v.

**MOBIL OIL EXPLORATION AND PRODUCING SOUTHEAST, INC. and Exxon Corporation.**

**Civ. A. No. 87–4786.**

United States District Court, E.D. Louisiana.

Aug. 18, 1988.

---

Joseph W. McKearn, New Orleans, La., for plaintiffs Chris Heavin and Kim Heavin.

George B. Jurgens, Milling, Benson, Woodward, Hillyer, Pierson & Miller, New Orleans, La., for defendants Mobil Oil Exploration and Producing Southeast, Inc. and Exxon Corp.

## ORDER

HEEBE, Chief Judge.

This cause came on for hearing July 13, 1988 on the Motion of defendants, Mobil Oil Exploration and Producing Southeast, Inc. and Exxon Corporation, for Summary Judgment.

The Court, having considered the record, the memoranda, and the arguments of counsel, is now fully advised in the premises and ready to rule. Accordingly,

IT IS THE ORDER OF THE COURT that the motion of defendants, Mobil Oil Exploration and Producing Southeast, Inc. and Exxon Corporation, be, and the same is hereby DENIED.

## REASONS

Defendants, Mobil Oil Exploration and Producing Southeast, Inc. ("Mobil") and Exxon Corporation ("Exxon"), have jointly filed this motion for summary judgment in the instant matter, setting forth three arguments in support thereof. Their first two arguments contend that they are immune from tort liability as a matter of law. Their third argument is based on the contention that they cannot be held liable in

negligence for the operations of an independent contractor.

The Court will address each of these arguments separately. But first, a brief review of the established and uncontested facts is appropriate.

On October 13, 1986, while in the course and scope of his employment with Chevron U.S.A., Inc. ("Chevron") as a pumper gauger/facility operator, Chris Heavin sustained an injury on Ship Shoal Block 169 "C" offshore oil and gas production structure ("Platform 169C"), which structure was located on the Outer Continental Shelf ("OCS") off the Louisiana coast. Heavin allegedly was injured when he stepped through a hole in the grating of one of the upper decks of that structure. Heavin and his wife (hereinafter sometimes collectively referred to as "plaintiffs") filed this suit against Mobil and Exxon to recover damages resulting from this accident. Specifically, plaintiffs allege that Mr. Heavin's injuries resulted from Mobil and Exxon's negligence in modifying Platform 169C, and that Mobil and Exxon knew or should have known that any modifications to Platform 169C were dangerous. (R., Doc. 1, paragraphs XI and XII). Because the Outer Continental Shelf Lands Act ("OCSLA") provides that, to the extent they are not inconsistent with other federal laws and regulations, the laws of the adjacent state apply to the OCS, 43 U.S.C. § 1333(a)(2)(A), plaintiffs are seeking to recover their alleged damages resulting from these negligence claims under La.Civ.Code arts. 2315–2322.

In addition, plaintiffs claim that Mobil and Exxon are strictly liable as owners of Platform 169C for any defect in that platform under La.Civ.Code art. 2322. (R., Doc. 1, paragraph XIII.)

Platform 169C was located on an area of the OCS designated as Ship Shoal Block 169. Ship Shoal Block 169 ("Block 169") was at all times relevant hereto leased by the United States of America to Exxon, Mobil, and Chevron. Additionally, these same three entities were the undivided owners of Platform 169C of Block 169, the structure on which Mr. Heavin allegedly

sustained his injuries. (R., Doc. 1, paragraph VIII).

In connection with their leasing Block 169, Chevron, Mobil, and Exxon entered into and executed a contract, which contract established the respective relationships among themselves; this contract was and is known as a Joint Operating Agreement (hereinafter sometimes referred to as "the Agreement"), which was attached as Exhibit "A" to Mobil and Exxon's Memorandum in Support of Motion for Summary Judgment. (R., Doc. 11.)

The Agreement was executed on July 25, 1960 by Gulf Oil Corporation ("Gulf"), the predecessor of Chevron; Socony Mobil Oil Company, Inc., the predecessor of Mobil; and Humble Oil and Refinery Company, the predecessor of Exxon. The Agreement provided that it would be binding upon all parties thereto and their successors. (Paragraph XXVII). Additionally, the Agreement named Gulf as the Operator of the joint lease, which, by virtue of Paragraph XXVIII became and was at the time of Mr. Heavin's alleged injury Chevron. In connection with its duties as Operator, Chevron employed Mr. Heavin and assigned him to Platform 169C on the day of that alleged injury.

1. *Are Mobil and Exxon immune from tort liability as joint employers of Mr. Heavin?*

Because the injuries allegedly sustained by Mr. Heavin occurred on a platform located on the OCS, OCSLA applies to plaintiffs' cause of action. 43 U.S.C. § 1333(a)(1). OCSLA provides that compensation shall be payable under the provisions of the Longshore and Harbor Workers' Compensation Act ("LHWCA"), 33 U.S.C. § 901, *et seq.*, when the "disability or death of an employee result[s] ... from an injury as the result of operations conducted on the Outer Continental Shelf for the purpose of developing or removing natural resources." 43 U.S.C. § 1333(b); *Bertrand v. Forest Corp.*, 441 F.2d 809, 810 (5th Cir.), *cert. denied*, 404 U.S. 863, 92 S.Ct. 106, 30 L.Ed.2d 107 (1971).

Relying on § 5(a) of the LHWCA, which immunizes LHWCA-covered employers from tort liability since it provides the "exclusive" remedy of LHWCA-employees against their employers, 33 U.S.C. § 905(a), *Bertrand,* 441 F.2d at 811, Exxon and Mobil argue that under the clear jurisprudence of this Circuit, the tort immunity granted Chevron under § 905(a) extends to them as joint venturers, and therefore joint employers, with Chevron. *Davidson v. Enstar Corp.,* 848 F.2d 574, 577–578 (5th Cir.1988).

Of course, this argument presupposes not only that Chevron, Mobil, and Exxon engaged in a joint venture, but also that Chevron, as Mr. Heavin's employer, was a member of that joint venture. Thus, the Court must first determine whether Chevron, Mobil, and Exxon entered into a joint venture when they executed the Agreement among themselves. If the Court finds that Chevron, Mobil, and Exxon did form a joint venture, then the Court must determine whether Chevron, when it employed Mr. Heavin, did so as a joint venturer or in some other capacity.

a. Did Chevron, Mobil, and Exxon form a joint venture when they executed the Agreement?

■ In determining whether a particular business relationship is a joint venture, the Court must ground its findings on the precise legal context in which the joint venture is alleged to exist. These contexts vary in relation to the facts of each particular case. *Sasportes v. M/V Sol de Copacabana,* 581 F.2d 1204, 1208 (5th Cir.1978).

Whether Chevron, Mobil, and Exxon formed an LHWCA-recognized joint venture by executing the Agreement must be decided in light of the following four factors:

"(1) whether the parties intended to form a partnership or a joint venture; (2) whether the parties share a common interest in the subject matter of the ven-

ture; (3) whether the parties share profits and losses from the venture; and (4) whether the parties have joint control or the joint right of control over the venture."

*Davidson,* 848 F.2d at 577.[1]

In considering the four (4) *Davidson* criteria to determine if Chevron, Mobil, and Exxon entered into a joint venture to develop their jointly-held mineral lease, plaintiffs agree that this Court need look not to prior jurisprudence, but rather to the Agreement, which is the sole creator of the legal relationships among Chevron, Mobil, and Exxon, and the facts concerning the operation of the lease in question. (R., Doc. 15, p. 4, n. 4)

Although *Davidson* does not require that all four of these aforementioned criteria be met in order to have an LHWCA-recognized joint venture, this Court finds that in the case at bar, all four factors are indeed satisfied by the Agreement herein.

Considering these four factors in reverse order, the Court must initially decide whether Chevron, Mobil, and Exxon exercised joint control, or at least enjoyed the ability to exercise joint control, over the business venture. The Court finds that under the Agreement, all parties thereto did enjoy this right. Although the operator was given full control over the operations of the joint lease, that control was subject to certain provisions. For instance, no wells could be drilled unless all parties mutually agreed upon the drilling of those wells. (Paragraph V (B)). Additionally, the operator was required under the Agreement to obtain approval from Mobil and Exxon to incur any non-drilling expenditure in excess of $25,000. (Paragraph V (B)). The operator was also required to submit an estimate of its costs to Mobil and Exxon for approval, along with sufficient information upon which Mobil and Exxon could base their decision on approving such ex-

---

1. Prior to *Davidson,* the classification of a business relation as a partnership, joint venture, or other business enterprise under the LHWCA was thought to be a matter of state law. *Johnson v. Odeco Oil and Gas Co., Inc.,* 679 F.Supp. 604, 607 (E.D.La.1987); *Taylor v. Getty Oil Co.,*

637 F.Supp. 886, 888 (E.D.La.1986). However, *Davidson* makes clear that the classification of a business as a joint venture, at least with respect to the LHWCA, is to be made using the four factors above, and not any state's law. *Davidson,* 848 F.2d at 578.

penditure. (Paragraph V (B)). Furthermore, anyone wishing to drill or rework a dry hole must notify in writing the other parties to the Agreement in order that those other parties may decide whether to allow and/or participate in such drilling or reworking. (Paragraph V (C)).

These provisions make clear that the major, nonadministrative decisions were to be shared jointly among Chevron, Mobil, and Exxon. Thus, the fourth LHWCA-joint venture criteria set forth in *Davidson* is satisfied by this Agreement.

The third criteria, whether Chevron, Mobil, and Exxon share the profits and losses from the venture, is also satisfied. The Agreement makes abundantly clear that the costs and expenses incurred under the Agreement were to be shared one-third each by Chevron, Mobil, and Exxon, (Paragraph III), the respective proportionate interests in the lease of each party. (Paragraph IV). In addition, Mr. Warren J. Sheppard, Jr., the District Land Supervisor in the Offshore Land Division of Chevron, stated in his affidavit, attached as Exhibit "B" to Mobil and Exxon's Memorandum in Support of Motion for Summary Judgment (R., Doc. 11), that Chevron operated the lease for the benefit of itself, Mobil, and Exxon (R., Doc. 11, Exhibit "B", paragraph 9) and shared in the production, liabilities, losses, and expenses of operating that lease in the manner set forth in the Agreement. (R., Doc. 11, Exhibit "B", paragraph 10).

The second criteria, whether the parties share a common interest in the subject matter of the venture, is satisfied and answered in Paragraph IV of the Agreement, wherein it is declared that Chevron, Mobil, and Exxon enjoy a proportionate interest of one-third each in the joint lease.

And finally, the first *Davidson* criteria, whether the parties intended to form a partnership or joint venture, is answered only by considering the Agreement *in toto*. After an examination of what expenses and duties were shared by Chevron, Mobil, and Exxon in accordance with the Agreement, the Court finds that the parties did indeed intend to form a joint venture; such inten-

tions are clearly evidenced by the language in the Agreement. For instance, as explained above, the Agreement makes clear that Chevron, Mobil, and Exxon jointly owned the mineral lease of Block 169 in the respective proportions of one-third each. (Paragraph IV). Accordingly, the costs and expenses incurred under the Agreement were to be shared one-third each. (Paragraph III). In order to properly account for the shared costs of the joint venture, Chevron, as Operator, was obligated to charge a "Joint Account" for any and "all costs and expenses incurred in connection with the joint operation" of the lease. (Paragraph VI (A)). In Exhibit A of the Agreement, a specific accounting procedure detailed how the Joint Account was to be debited and credited. The expenses charged to the Joint Account were to be paid one-third each by the joint venturers. (Paragraph VI(A)). Chevron, as Operator, was to charge the Joint Account all expenses which it incurred in operating and developing the mineral lease of Block 169. (Joint Operating Agreement, Exhibit "A", § II.) Although the Operator may have been responsible for the drilling operations, it is clear that the expenses of such operations were to be borne by all three parties to the Agreement.

Further evidence of the Agreement's intending to form a joint venture is its requiring the mutual consent of all parties if one party desires to release or assign its interest in the lease. (Paragraph XVII (A)). Additionally, if a partition of the parties' undivided interests in the lease became necessary, the parties to the Agreement wishing to remain a part thereof enjoyed a right of first refusal on the exiting party's interest. These considerations collectively, if not separately, evidence a clear intention by Chevron, Mobil, and Exxon to form a joint venture.

Having determined that all four of the criteria to establish an LHWCA-recognized joint venture set forth in *Davidson* have been met, the Court finds that the Agreement, which is the subject of this lawsuit, did in fact form a joint venture for purposes of the LHWCA. As a result, Chev-

ron, Mobil and Exxon are all co-joint venturers in the development of the mineral lease of Block 169.

Thus, at first glance, it appears that both Mobil and Exxon, as Chevron's co-joint venturers, enjoy Chevron's immunity from tort suits of Chevron's employees working in the development of the mineral lease of Block 169, since as co-joint venturers, they appear to be co-employers with Chevron of Mr. Heavin. Johnson v. Odeco Oil and Gas Co., Inc., 679 F.Supp. 604, 607 (E.D.La. 1987). In fact, plaintiffs readily concede that pursuant to the LHWCA, 33 U.S.C. § 905(a), tort immunity does indeed extend to parties engaged in a joint venture. (R., Doc. 15, pg. 1.). However, plaintiffs' Memorandum in Opposition to Motion for Summary Judgment (R., Doc. 15) does not concentrate on the issue of whether Chevron, Mobil, and Exxon formed a joint venture. Although plaintiffs do not concede as much, the basis of their opposition is that Chevron's developing the lease as Operator goes beyond its capacity as a joint venturer and saddles it with yet another capacity— as independent contractor. This contention by plaintiffs leads us to the second of the two prongs included in Mobil and Exxon's first argument. That issue will now be addressed.

b. As the Operator of the joint lease, was Chevron an independent contractor or did it remain a joint venturer for that purpose as well?

Plaintiffs contend that the operations in which Mr. Heavin was engaged at the time of his injury were beyond the scope of the joint venture, and he was therefore an employee of Chevron, not in Chevron's capacity as a joint venturer, but rather in Chevron's capacity as an independent contractor. Plaintiffs argue that the naming of a joint venturer as the operator of the lease does not preclude that named operator from being an independent contractor. They contend this argument is supported by the Agreement itself, which states in Paragraph XVI (which paragraph is entitled "Liability of Parties") that "it is agreed that all acts of the party serving as Operator [Chevron] in conducting opera-

tions hereunder shall be considered those of an independent contractor."

On the other hand, Mobil and Exxon argue that Chevron's status as their co-joint venturer makes it a joint venturer at all times and for all purposes, notwithstanding the language cited above from the Agreement. Whether Chevron can simultaneously wear two separate and distinct hats (as joint venturer and independent contractor), or whether those two hats are inextricably joined is the key issue in determining whether Chevron's tort immunity extends to Mobil and Exxon.

The Court finds that the aforementioned language designating Chevron's activities as Operator to be those of an independent contractor is dispositive of the issue. This language evidences that the Operator, which in this case was Chevron, but could have been some other party, was intended to be an independent contractor. To hold otherwise would be a direct disregard for this language, which the Court cannot do in light of the recent Fifth Circuit decision of *Davidson.*

In *Davidson,* the plaintiffs were employed by ODECO, the Operator of a lease it jointly held with the defendants. While the plaintiffs were working on a platform fulfilling their duties as ODECO employees, the platform collapsed causing serious injuries to the plaintiffs therein, who then filed suit for the resulting damages. Named as defendants in their suit for the damages resulting from those injuries were those entities who jointly held the lease for which ODECO was the Operator. Just as in the case at bar, all of the leaseholders in *Davidson* entered into and executed a Joint Operating Agreement; their agreement named ODECO, a co-lessor, as the Operator of the lease.

Defendants therein urged the *Davidson* panel in its interpretation of the Joint Operating Agreement to "ignore their express statement of intent because the remainder of the contract clearly reflects the parties' intent to form a joint venture." *Id.* at 578. Essentially, that is exactly what Mobil and Exxon are asking this Court to do. Be-

cause the remainder of the Agreement which is the subject of this lawsuit indicates that Chevron was intended to be a joint venturer, and therefore, movers argue, should be considered a joint venturer for all purposes, this Court is asked by movers, as was the *Davidson* panel, to disregard the plain and unambiguous, although perhaps inconsistent, statement that the Operator of this jointly held lease be, and is, an independent contractor. Although the exact language, or statement, which the Court was asked to disregard in *Davidson* is not the same statement[2] which this Court is asked to disregard, the issue is the same—may a court disregard a contract's express language?

Counsel for movers argued that this difference between the language addressed in *Davidson* and the language at issue here distinguishes the issue in *Davidson* and its holding from the issue before this Court. Rather, movers contend that *Alexander v. Chevron*, 806 F.2d 526 (5th Cir.1986), is more analogous to the situation before the Court because it did address language specifically related to a contractor's status as an independent contractor. In *Alexander*, plaintiffs' employer contracted with Chevron to furnish labor, among other things, and "to perform the work as an independent contractor and not as an employee of [Chevron]...." *Id.* at 529. In granting summary judgment, the district court in *Alexander* found that this language did not "preclude ... a finding that [plaintiff was] ... Chevron's borrowed employee." *Id.* at 528. In affirming the district court's granting Chevron's motion for summary judgment, Judge Davis, writing for the *Alexander* panel, held that such contractual language, that is, language declaring that the " '[c]ontractor agrees to perform the work as an independent contractor and not as an employee of [Chevron]' ... does not purport to prohibit Chevron from becoming the borrowing employer ..." of plaintiff. *Id.*

However, *Alexander's* holding is quite inapposite to the case at bar. First, *Alexander* relates to issues of borrowed servants and employers. Second, defendants in *Alexander* did not ask the court therein to specifically disregard that language. *Alexander* merely holds that such language, in and of itself, does not preclude a finding that plaintiff was a borrowed employee of Chevron. But in the case before this Court, Mobil and Exxon are asking for a finding that Chevron was not an independent contractor. Such a finding would not only require a complete and utter disregard for the contract's language, it would also require a finding in direct contravention to that language.

For these reasons the Court feels that the Fifth Circuit's opinion in *Davidson*, not *Alexander*, dictates how it should resolve the issue of whether the Agreement's language designating the Operator as an independent contractor can be overlooked. The *Davidson* panel clearly resolved that issue negatively: "We know of no rule of contract interpretation that suggests we should not give effect to this clear statement of intent." *Davidson*, at 578. In explaining this holding, Judge Davis, also writing for the *Davidson* panel, wrote that for "whatever reasons ... [defendants] chose to specify in the JOA that their arrangement would not be considered a partnership or similar entity. Because it now serves their interest to have the relationship characterized as a joint venture, *so they can avoid tort liability* to employees working on the platform, *they seek to disavow their contract language. This, they cannot do."* *Id.* at 579. (Emphasis added). Plaintiffs could not have written more compelling and favorable language themselves. These most recent reasons not only require this Court's recognition of the language in question, they demand the Court's following it.

An additional factor in plaintiff's favor, not present in *Davidson*, is the fact that

---

**2.** The Fifth Circuit in *Davidson* was asked to disregard the following "unmistakably clear language" (*Id.* at 578) in the Joint Operating Agreement before it: " '[i]t is not the intention of the parties hereto to create a partnership, association, trust, or other semblance of business entity.' " *Id.* at 578. This Court is asked to ignore the equally as clear and unmistakable language that the Operator, Chevron, is an independent contractor.

the language they rely on to defeat this motion is contained in an Article of the Agreement entitled "Liability of Parties." Thus, it is clear that Chevron, Mobil, and Exxon intended the Operator to be an independent contractor in the exact context in which plaintiffs are attempting to classify it as such—liability for claims. The facts at bar are even more in favor of plaintiffs herein than those in *Davidson* because these plaintiffs wish to classify Chevron as an independent contractor using language which was included in an Article specifically dealing with the liability of the parties to the Agreement.

Accordingly, for the reasons set forth above, this Court cannot find that Chevron, as the operator of the joint lease, was a joint venturer, and therefore, cannot extend to Mobil and Exxon via summary judgment the 33 U.S.C. § 905(a) immunity granted Chevron.

### 2. Are Mobil and Exxon immune from strict liability claims?

■ Mobil and Exxon have also urged a second argument in favor of their motion for summary judgment. They argue that because Platform 169C was owned by Mobil and Exxon in their capacity as joint venturers with Chevron, they are statutorily immune from any strict liability claims.[3]

Mobil and Exxon's argument is premised on the contention that because they are co-joint venturers with Chevron, and all three owned Platform 169C, they are "clearly joint venturers as regards ownership of" Platform 169C, even if Chevron enjoyed a capacity other than that of a joint venturer in its operation of the lease. The Court agrees with this contention—regardless of Chevron's capacity as the lease's Operator, Chevron, Mobil, and Exxon jointly owned Platform 169C as joint venturers.

However, despite Mobil and Exxon's second argument being soundly premised, its conclusion is invalid. Their bald contention that "a joint venturer is entitled to the tort immunity afforded under the LHWCA" is

erroneous. The LHWCA makes clear that the immunity from tort actions granted in 33 U.S.C. § 905(a) is only in favor of employers.

■ Although it is true that joint venturers may sometimes enjoy the immunity from tort actions granted by 33 U.S.C. § 905(a), that immunity arises not because the joint venturer is a joint venturer, *per se*, but because the joint venturer is deemed an LHWCA employer. A joint venturer becomes an LHWCA employer whenever a joint venture or one of its members employs a particular employee. For purposes of the LHWCA, all the members of the joint venture become joint employers of that employee as a matter of law. *Johnson*, 679 F.Supp. at 607. Mobil and Exxon's immunity from tort suits under 33 U.S.C. § 905(a) could arise only if they were Mr. Heavin's joint employers; it could not arise because they co-owned Platform 169C with Mr. Heavin's employer (who does enjoy § 905(a) immunity).

However, since plaintiffs have alleged that Mr. Heavin was employed by Chevron not in Chevron's capacity as a joint venturer (which would render Mobil and Exxon joint employers of Mr. Heavin), but rather in Chevron's capacity as an independent contractor, Mobil and Exxon cannot be Mr. Heavin's joint employers with Chevron.

To grant Mobil and Exxon's motion merely on the grounds that Platform 169C was jointly owned by Chevron, Mobil, and Exxon as joint venturers would impermissibly expand employer immunity to owner immunity. This the Court cannot do.

For the reasons stated above, the Court refused to find that Mr. Heavin was employed by the joint venture. Thus, it could not earlier grant this motion on the grounds that Mobil and Exxon were Mr. Heavin's joint employers. It now also cannot hold that Mobil and Exxon, as joint venturers and joint owners of Platform 169C, enjoyed the immunity granted employers (and joint employers) by 33 U.S.C.

---

**3.** In Paragraph XIII of their complaint, plaintiffs have alleged that Mobil and Exxon are strictly liable as owners of any defect in Plat-

form 169C under La.Civ.Code art. 2322. (R., Doc. 1, paragraph XIII).

§ 905(a) with respect to Mr. Heavin's strict liability claims against Mobil and Exxon as *owners* of Platform 169C.

> *3. Assuming Chevron was an independent contractor in its capacity as Operator, may plaintiffs maintain a negligence claim against defendants?*

■ Mobil and Exxon's third and final argument in support of their motion for summary judgment is that if Chevron were an independent contractor while operating the jointly-held lease, Mobil and Exxon cannot be held liable in negligence for operations negligently conducted on their platform by Chevron.[4] In other words, assuming that Chevron was an independent contractor in its capacity as Operator, then Mobil and Exxon argue that they cannot be liable in negligence to Mr. Heavin because principals such as they are not legally responsible for the damages caused by their independent contractor's negligence. However, the fallacy of this argument is that it assumes the independent contractor, Chevron, is accused by plaintiffs of the negligent conduct which caused Mr. Heavin's injuries. Although movers are correct in their interpretation of the well-settled Louisiana law exonerating principals such as Mobil and Exxon from liability for injuries caused by their independent contractor's negligence, *Ainsworth v. Shell Offshore, Inc.,* 829 F.2d 548 (5th Cir.1987), *U.S. appeal pending,* they are incorrect in their application of that law because plaintiffs in this case have not alleged that any negligent conduct on the part of the independent contractor, Chevron, caused Mr. Heavin's injuries. Had plaintiffs' sole allegation of negligence regarded Chevron's conduct, Mobil and Exxon's argument would apply to plaintiffs' allegations, and Mobil and Exxon, as principals, could not be held liable for such negligence on the part of their independent contractor. But because plaintiffs allege that it was the negligence of Mobil and Exxon which caused Mr. Heavin's injuries, this final argument in support

of the motion is misplaced, as it applies only to claims against principals for their independent contractors' negligence.

Although this Court feels the facts and allegations in *Ainsworth* are so distinguishable from the case at bar that it bears no relationship to it, both defendants' reliance thereon, and on *Funderburk v. Maintenance Associates, Inc.,* 640 F.Supp. 813 (E.D.La.1986), and the recency of these decisions dictate a brief discussion of them. In *Ainsworth,* Shell Offshore, Inc. ("Shell"), who owned a bare platform on the OCS, contracted with Hercules Offshore Drilling Co. ("Hercules") to furnish a rig and drill a well from their bare platform. After Hercules transported its rig and equipment to Shell's platform, it began drilling operations around the clock despite there being no lights on either the rig or platform. It was undisputed that Hercules, Shell's independent contractor, was responsible for lighting the platform during operations in the dark; it was also undisputed that the improper lighting of the work area caused Mr. Ainsworth's injuries.

In addressing the negligence claims of plaintiff in *Ainsworth,* Judge Davis, writing for the panel, discussed Louisiana law regarding a principal's liability for the negligent acts of its independent contractor. The *Ainsworth* panel held that a principal, with two exceptions, "is generally liable for the offenses an independent contractor commits in the course of performing his duties." 829 F.2d at 549, *citing Hawkins v. Evans Cooperage Co., Inc.,* 766 F.2d 904 (5th Cir.1985), and *Robideaux v. Hebert,* 118 La. 1089, 43 So.887 (1907). The touchstone of this holding, and the defect in Ainsworth's cause of action, was his limiting his negligence claim to the actions of Hercules, the independent contractor, in failing to properly light the work area which caused his injuries. Under Louisiana law, as described by Judge Davis, Shell, Hercules' principal, could not be liable for Hercules' negligence on its rig. However, this Court feels that Mr. and

---

**4.** In Paragraphs XI and XII of their complaint, plaintiffs have alleged that Mr. Heavin's injuries resulted from Mobil and Exxon's negligently modifying Platform 169C, and that they knew or should have known that such modifications to Platform 169C were dangerous.

Mrs. Heavin's allegation that the negligence of Mobil and Exxon, as opposed to that of Chevron, caused Mr. Heavin's injuries removes this case from the scope of *Ainsworth.*

This allegation also distinguishes the decision of this Court in *Funderburk v. Maintenance Associates, Inc.,* 640 F.Supp. 813 (E.D.La.1986), where a motion for summary judgment of a principal was granted because the Court found it could not be liable for its independent contractor's negligence. In *Funderburk,* plaintiff was engaged in sandblasting Chevron's platform as part of his duties as an employee of Maintenance Associates, Inc. ("MAI"), who had contracted with Chevron to perform certain duties on Chevron's platform. The *Funderburk* court held that a principal such as Chevron which does not exercise operational control over independent contractor MAI or its employees is not liable for the negligent acts committed by that independent contractor. *Id.* at 814.

As explained above, because plaintiffs herein allege that the negligence of Mobil and Exxon, not of Chevron, caused Mr. Heavin's injuries, this final argument and the corresponding reliance on *Ainsworth* and *Funderburk* in support of it, are misplaced. Consequently, the Court must dismiss this third and final argument of Mobil and Exxon in support of their motion for summary judgment on the grounds that plaintiffs have alleged a claim of negligence against them and not their assumed independent contractor, Chevron the Operator.

Accordingly, for the reasons set forth above,

IT IS THE ORDER OF THE COURT that the motion of defendants, Mobil Oil Exploration and Producing Southeast, Inc. and Exxon Corporation, be, and the same is hereby, DENIED.